# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00316-CV

**Texas Department of Licensing and Regulation, Appellant**

**v.**

**John Thompson, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-09-004309, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Department of Licensing and Regulation (the Department) appeals the district court's judgment reversing its commission's decision denying appellee John Thompson's application for a tow truck operator incident management license. For the reasons that follow, we reverse the district court's judgment.

## BACKGROUND

*Licensing of Tow Truck Operators*

The Department is the state agency responsible for licensing tow truck operators. Tex. Occ. Code § 2308.151; 16 Tex. Admin. Code § 86.207 (Tex. Dep't of Licensing and Regulation, Licensing Requirements—Towing Operator License); *see also* Tex. Occ. Code § 51.051(a) ("The [Department] is the primary state agency responsible for the oversight of businesses, industries, general trades, and occupations that are regulated by the state and assigned

to the department by the legislature."). The Department is governed by the Texas Commission of Licensing and Regulation (the Commission). Tex. Occ. Code § 51.051(b); *see id*. § 51.001(1-a) (defining "Commission").

Chapter 53 of the Occupations Code, titled "Consequences of Criminal Convictions," provides a framework for licensing authorities, such as the Department, to evaluate the eligibility of license applicants who have criminal convictions. *See id.* §§ 53.001–.105. For purposes of this appeal, a licensing authority may deny a license based upon the applicant's conviction of "an offense that directly relates to the duties and responsibilities of the licensed occupation." *Id.* § 53.021(a)(1). To determine "whether a criminal conviction directly relates to an occupation," the licensing authority must consider the following factors:

(1)     the nature and seriousness of the crime;

(2)     the relationship of the crime to the purposes for requiring a license to engage in the occupation;

(3)     the extent to which a license might offer an opportunity to engage in further criminal activity of the same type as that in which the person previously had been involved; and

(4)     the relationship of the crime to the ability, capacity, or fitness required to perform the duties and discharge the responsibilities of the licensed occupation.

*Id*. § 53.022.

"In determining the fitness to perform the duties and discharge the responsibilities of the licensed occupation of a person who has been convicted of a crime," the licensing authority also must consider the following factors in relevant part:

(1) the extent and nature of the person's past criminal activity;

(2) the age of the person when the crime was committed;

(3) the amount of time that has elapsed since the person's last criminal activity;

(4) the conduct and work activity of the person before and after the criminal activity;

(5) evidence of the person's rehabilitation or rehabilitative effort while incarcerated or after release; and

(6) other evidence of the person's fitness, including letters of recommendation from:
. . .

(C) any other person in contact with the convicted person.

*Id*. § 53.023(a). An applicant also is required to furnish proof to the licensing authority that the applicant has "maintained a record of steady employment" and "a record of good conduct." *Id*. § 53.023(c)(1), (3).

Further, the Department has adopted guidelines relating to its practice under chapter 53. *See id*. § 53.025(a) (requiring licensing authorities to issue guidelines that "state the reasons a particular crime is considered to relate to a particular license and any other criterion that affects the decisions of the licensing authority"). With this regulatory framework in mind, we turn to the parties' dispute.

3

*The Commission's Denial of Thompson's Application*

Thompson applied for a tow truck operator incident management license in 2008. After Department staff proposed denying his application, he sought a hearing before the State Office of Administrative Hearings (SOAH).

The hearing before the administrative law judge (ALJ) occurred in June 2009.[1] The Department staff sought to deny Thompson's application based upon criminal convictions from 1988. Thompson was court-martialed and convicted of sodomy with a child under the age of sixteen and for assaulting his ex-wife.[2] The staff urged that Thompson was not fit for licensure because of the nature of the convictions and the short time since he was released from prison. Thompson was sentenced to thirty years' confinement but released from prison in November 2005 after serving over seventeen years with good behavior, and his sentence was discharged. After his release from prison, he was required to register as a sex offender. *See* Tex. Code Crim. Proc. art. 62.051 (sex offender registration requirements). During his incarceration, he did not receive sex offender counseling.

The staff also contended that Thompson's criminal convictions were directly related to the occupation of a tow truck operator. *See* Tex. Occ. Code §§ 53.021–.023. The Department's rationale for the direct relationship was that "tow truck operators have direct contact with members of the general public, often in settings with no one else present, and at times, in secluded locations."

---

[1] According to pleadings filed by the parties with the district court, only a portion of the administrative hearing was recorded. The relevant facts are not disputed.

[2] Thompson was convicted of committing sodomy with a child under the age of 16 on diverse occasions between September 15, 1984, and September 1, 1985, between November 25 and December 6, 1985, and between June 1 and September 1, 1985. He also was convicted of striking his ex-wife with his hands between August 1 and September 1, 1985.

4

An investigator with the Department testified at the hearing that "tow truck drivers are permitted to work anywhere and come into contact with the public, including children in remote locations."

At the SOAH hearing, Thompson maintained that he did not commit the crimes that formed the basis of the 1988 convictions and urged that he was fit to perform the duties and responsibilities of a tow truck operator. He contended that his ex-wife falsely accused him of the crimes against her and her seven and nine year old sons when they were going through a divorce. Thompson was 22 years old at the time of the crimes. No evidence was presented at the hearing that Thompson had committed any other crimes. During his incarceration, he received a college degree and a certificate for completing training as an automotive mechanic. He was employed after he was released from prison without incident, including working as a tow truck operator from April 2007 to September 2008. Thompson also submitted letters of recommendation from employers, clients, a co-worker, and a family member.

In her proposal for decision, the ALJ found that "[t]he Department had adopted criminal conviction guidelines stating that crimes involving prohibited sexual conduct or children as victims are considered to be directly related to tow truck operator licenses." The ALJ, however, recommended granting the license. She found that "Staff failed to prove by a preponderance of the evidence that Mr. Thompson should not be licensed because of his criminal history" and that he was "fit to perform the duties and discharge the responsibilities of a tow truck operator." The ALJ credited Thompson's position that he did not commit the crimes as "evidence of integrity" and Thompson's efforts at self-improvement—receiving his college degree and training as an automotive

5

mechanic during his imprisonment and his employment without incident after his release—as evidence of his fitness for licensure.

In its decision, the Commission rejected the ALJ's recommendation and denied Thompson's application for a license. The Commission concluded that the ALJ had failed to apply the law properly. The Commission deleted the ALJ's Finding of Fact No. 20 in its entirety and changed Finding of Fact No. 19 to read:

> Due to the nature and seriousness of his offenses, and an apparent lack of rehabilitative effort, Mr. Thompson has not demonstrated that he can satisfactorily perform the duties and discharge the responsibilities of a tow truck operator.[3]

---

[3] The ALJ's findings of fact and conclusions of law that were deleted or modified stated in relevant part:

Finding of Fact No. 19: Mr. Thompson has demonstrated that he can satisfactorily perform the duties and discharge the responsibilities of a tow truck operator, despite his criminal background.

Finding of Fact No. 20: The preponderant evidence shows that Mr. Thompson is not likely, in the future, to commit a crime similar to one of those of which he was convicted.

Conclusion of Law No. 7: Staff failed to prove by a preponderance of evidence that Mr. Thompson should not be licensed because of his criminal history.

Conclusion of Law No. 8: Based upon the above Findings of Fact and Conclusions of Law, Mr. Thompson is fit to perform the duties and discharge the responsibilities of a tow truck operator. Tex. Occ. Code § 53.022.

Conclusion of Law No. 9: Based upon the above Findings of Fact and Conclusions of Law, Mr. Thompson's application for a Tow Truck Operator Incident Management License should be granted.

The Commission also deleted the ALJ's Conclusion of Law No. 7 and modified Conclusion of Law

Nos. 8 and 9 to read:

> Based upon the above Findings of Fact, Mr. Thompson is not fit to perform the duties
> and discharge the responsibilities of a tow truck operator.  Tex. Occ. Code § 53.022.
>
> Based upon the above Findings of Fact and Conclusions of Law, Mr. Thompson's
> application for a Tow Truck Operator Incident Management License should
> be denied.

Thompson filed a motion for rehearing, challenging the Commission's decision to deny his license

application.  The Commission denied the motion for rehearing by written decision.

*Judicial Review*

Thompson sought judicial review of the Commission's denial of his application.  *See*

Tex. Gov't Code § 2001.171; Tex. Occ. Code §§ 51.024, 53.052.  After a hearing and briefing by

the parties, the district court reversed the Commission's decision, concluding that "substantial rights

of the Plaintiff have been prejudiced because the administrative findings, inferences, conclusions,

or decisions were made through unlawful procedure."  This appeal followed.

## ANALYSIS

In two issues on appeal, the Department urges that the district court should have

affirmed the Commission's decision.  The Department contends that the Commission's decision was

supported by substantial evidence and that the Commission properly interpreted the Occupations

Code to require that fitness of a license applicant with criminal convictions be shown by

rehabilitation related to the conduct underlying the convictions.  The Department urges that the

7

district court should have deferred to the Department's interpretation of the Occupations Code and that the district court exceeded the boundaries of an appropriate substantial evidence review.

*Standard of Review*

Judicial review of the Commission's decision is under the substantial evidence standard of review. *See* Tex. Gov't Code § 2001.174. A court applying this standard shall reverse or remand an administrative order "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are," among other grounds, "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole" or "made through unlawful procedure." *Id*. § 2001.174(2)(C), (E). A court, however, "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion." *Id*. § 2001.174; *see Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 751 (Tex. App.—Austin 2006, pet. denied) ("We may not substitute our judgment for that of the agency on questions committed to agency discretion." (citing *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 197 (Tex. 2003)).

The parties' dispute also concerns the construction of statutes, which is a question of law we review de novo. *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621,

8

625–26 (Tex. 2008)). "If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, . . . we normally defer to an agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011).

*The Commission's Decision*

The district court determined that the Department prejudiced substantial rights of Thompson because its "findings, inferences, conclusions, or decisions" were "made through unlawful procedure." Tex. Gov't Code § 2001.174(2)(C). In its two issues, the Department contends that the district court erred because it failed to focus on—and should have based its decision on—the Department's authority to modify the ALJ's findings of fact and conclusions of law "to properly reflect its interpretation that rehabilitative efforts require a nexus to the underlying criminal conduct" and the ALJ's "significant misinterpretation of rehabilitation requirements for applicants convicted of felonies involving prohibited sexual conduct or involving children as victims."

The Department urges that the Commission complied with the applicable procedures for modifying the ALJ's findings and conclusions, specifically section 2001.058(e) of the Government Code. *See id.* § 2001.058(e). Section 2001.058(e) authorizes a state agency to modify a finding of fact or conclusion of law made by an ALJ if the agency determines that the ALJ "did not properly apply or interpret applicable law." *Id.*; *see Pierce*, 212 S.W.3d at 755–56 (concluding that state agency's decision to modify ALJ's conclusion of law complied with section 2001.058(e) and was not made through unlawful procedure). When a state agency changes a finding of fact or

9

conclusion of law made by an ALJ, "[t]he agency shall state in writing the specific reason and legal basis for a change made under this subsection." Tex. Gov't Code § 2001.058(e).

Here, the Commission deleted the ALJ's findings that Thompson had demonstrated that he could satisfactorily "perform duties and discharge the responsibilities of a tow truck operator" and that the preponderance of the evidence showed that Mr. Thompson was unlikely to commit a crime similar to the ones of which he was convicted. The Commission also deleted conclusions of law and modified others to conclude that Thompson was not fit to perform the duties and discharge the responsibilities of a tow truck operator and that his license should be denied. The Commission provided the following explanation for its modifications to the ALJ's findings and conclusions:

> The Administrative Law Judge did not properly apply the law when analyzing the factors contained in § 53.021 Tex. Occ. Code, concluding that applicant was fit to hold a Tow Truck Operator Incident Management license. Applicant was convicted of very serious crimes. Therefore, to warrant the granting of the license, any mitigating factors must outweigh the nature and severity of the offenses because the offenses are directly related to the occupation, and the license would offer applicant the opportunity to engage in similar criminal activity.
>
> Though the applicant committed the offenses more than twenty years ago when he was 22 years old, and he has apparently maintained a good work record since his release from prison, we find minimal evidence of a rehabilitative effort which deals with the circumstances or behavior which caused the commission of the offenses. Additionally, the applicant's release on November 29, 2005 is less than four years ago, an insufficient amount of time to overcome the nature and seriousness of the offense. Finally, the Commission is concerned that the Administrative Law Judge appears to weigh in applicant's favor the fact that applicant has persisted in maintaining his innocence over the years, thus minimizing or prohibiting any earnest rehabilitative effort. The weight that this Administrative Law Judge gave to this factor appears to contradict the weight that should have been given to the statutorily-required factor of "rehabilitation" in § 53.021 Tex. Occ. Code. Though applicant did pursue and obtain a college degree and mechanic training while incarcerated, those pursuits do not address how to treat or manage the behavior which led to the offenses. The employer of the applicant presented evidence that applicant has

10

demonstrated an ability to perform related work with no incident, but he only worked for them for a one-year period.

Based upon this analysis, the Commission concluded: "Due to the nature and seriousness of the offenses, and his apparent lack of rehabilitative effort, Mr. Thompson has not demonstrated that he can satisfactorily perform the duties and discharge the responsibilities of a tow truck operator."

We find instructive the analysis in *Smith v. Montemayor*, No. 03-02-00466-CV, 2003 Tex. App. LEXIS 5099 (Tex. App.—Austin June 19, 2003, no pet.) (mem. op.). In that case, the district court affirmed the order of the Commissioner of Insurance denying an application for a local recording agent's license. *See id*. at *1. The ALJ had recommended granting the license, but the Commissioner disagreed based upon two felony theft convictions and modified certain findings of fact and conclusions of law, "reasoning that the ALJ has misinterpreted the applicable law." *Id*. at *2, 4–5. One of the appellant's issues challenged the Commissioner's modification of the findings of fact and conclusions of law under section 2001.058(e). *Id.* at *21. We held that the Commissioner did not abuse his discretion in modifying the ALJ's findings and conclusions, explaining:

> None of the Commissioner's modifications that [the appellant] finds objectionable involved adjudicative facts, that is, facts that require weighing the evidence and making credibility determinations. . . . Rather, the modifications reflect the Commissioner's interpretation of the Department's rules and applicable statutes. An agency enjoys complete discretion in modifying an ALJ's findings and conclusions when those findings and conclusions reflect a lack of understanding or misapplication of the existing laws, rules or policies. . . . Furthermore, the Commissioner fully complied with the statutory requirement that he specify the reason and legal basis for the changes made to the ALJ's findings.

11

*Id.* at *26–27 (internal citations omitted).

Similarly, the Commission in this case modified the ALJ's findings and conclusions based upon its determination that the ALJ had misapplied existing law and provided its reasons in writing for its modifications. The Commission specifically found that the ALJ had misapplied the statutory factors. In its decision, the Commission expressed concern with the seriousness and nature of Thompson's crimes involving prohibited sexual conduct and children as victims and disagreed with the ALJ's analysis of Thompson's rehabilitation. *See* Tex. Occ. Code § 53.023(a)(5); *see, e.g.*, *Rodriguez v. State*, 93 S.W.3d 60, 68 (Tex. Crim. App. 2002) (noting that, in enacting sex offender registration statute, legislature considered the "unique threat sex offenders present to public safety, the high rate of recidivism among sex offenders, the low incidence of rehabilitation among sex offenders, and that sexual misconduct often begins as a juvenile" (quoting *In re. M.A.H.*, 20 S.W.3d 860, 863 (Tex. App.—Fort Worth 2000, no pet.))). In contrast with the ALJ's interpretation, the Commission interpreted "rehabilitative efforts" to require more than general efforts of self-improvement that were not related to the underlying criminal activity. In its decision denying Thompson's motion for rehearing, the Commission explained: "[T]he Commission interpreted rehabilitation or rehabilitative efforts to require a nexus between the conduct giving rise to the criminal conviction and the rehabilitation or rehabilitative efforts."

Thompson does not dispute that he did not receive sex offender counseling related to the conduct underlying the convictions. Thompson was not eligible for counseling during his imprisonment because he denied that he committed the crimes, and, after his release, he continued to maintain that he was falsely convicted. The ALJ concluded that Thompson's consistent position

12

weighed in his favor and was a mark of "integrity." Whether an applicant was properly convicted of the crimes at issue, however, is not among the statutory factors for consideration. *See* Tex. Occ. Code §§ 53.022–.023. In contrast with the ALJ's analysis, the Commission addressed the statutory factor of rehabilitation in the context of the specific conduct underlying his convictions and determined that Thompson's position minimized or prohibited "any earnest rehabilitative effort."

We also note that denying Thompson's license was within the bounds of the Department's statutory authority, *see id.* § 53.021, and that the Commission expressly addressed and made findings in its decision as to the other statutory factors in sections 53.022 and 53.023. *See id.* §§ 53.022–.023. The Commission considered the "nature and seriousness" of Thompson's convictions, "the purposes for requiring a license to engage in the occupation" of tow truck operator, and the direct relationship between his crimes and the occupation of tow truck operator. *See id.* § 53.022. The Commission concluded that the crimes "directly related to the occupation, and the license would offer applicant the opportunity to engage in similar criminal activity." The Commission also considered the extent of Thompson's past criminal activity, his age at the time he committed the crimes, the amount of time that had elapsed since his last criminal activity, his conduct and work activity, and other evidence of his fitness, including the letters of recommendation.[4]

---

[4] The Commission's findings of fact included the following:

- Mr. Thompson worked successfully as a tow truck operator from April 2007 to September 2008.

- No evidence was presented indicating that Mr. Thompson has committed any criminal activity since his release.

In its decision, the Commission expressly noted that Thompson "apparently maintained a good work record since his release from prison," he "did pursue and obtain a college degree and mechanic training while incarcerated," and that Thompson's employer "presented evidence that applicant has demonstrated an ability to perform related work with no incident." *See id*. § 53.023. Although this evidence was favorable to Thompson, whether to deny Thompson's license because of his criminal convictions was a matter within the Department's discretion. *See id*. § 53.021 (providing that licensing authorities "may" deny license based upon criminal conviction); Tex. Gov't Code § 311.016 ("'May' creates discretionary authority or grants permission or a power."). We may not substitute our judgment for that of the Department on a matter committed to its discretion. *See* Tex. Gov't Code § 2001.174; *Pierce*, 212 S.W.3d at 751.

We conclude that the Commission complied with section 2001.058(e) by specifying the reason and legal basis for its modifications to the ALJ's findings and conclusions and that its decision was supported by substantial evidence and made through lawful procedure. *See* Tex. Gov't Code §§ 2001.058(e), .174. Thus, we sustain the Department's issues.

*Thompson's Response*

Thompson raises several issues and various arguments in his appellee's brief to support the district court's judgment and to respond to the Department's issues. In addition to challenging the Commission's modifications to the ALJ's findings and conclusions, he urges that

---

- Employers, clients, a co-worker, and a family member provided recommendations on Mr. Thompson's behalf, attesting to his professionalism, dependability, good character, and honesty.

14

the Department cannot assert a new and different definition of rehabilitation for the first time after a SOAH hearing and that the Department improperly interpreted rehabilitation to require allocution. He also raises due process concerns. To the extent that we have not already done so, we respond to his arguments.

*Reasonableness of Department's Interpretation*

Thompson contends that the Department's interpretation of rehabilitation is unreasonable because his crime is not actually related to the occupation of a tow truck driver and that this Court should not defer to the Department's interpretation because chapter 53 is not a Department-specific statute, the statute is not ambiguous, and the Department's interpretation is not reasonable. Chapter 53, however, expressly authorizes the Department to deny a license application based upon criminal convictions and requires it to issue criminal conviction guidelines as to particular crimes. *See* Tex. Occ. Code §§ 53.021, .025(a). The Department's guidelines provide that crimes involving prohibited sexual conduct or children as victims relate directly to the duties and responsibilities of the licensed occupation of a tow truck operator. According to its guidelines, Thompson's convictions of the offense of sodomy with a child then "directly related to the occupation."

We also conclude that the Department's interpretation is reasonable and in accord with the plain language of the statute. *See Texas Citizens*, 336 S.W.3d at 625. Factors other than the rehabilitation factor in section 53.023(a)(5) specifically address an applicant's fitness based upon general efforts of self-improvement that are unrelated to the underlying criminal activity. *See* Tex. Occ. Code §§ 53.023(4) (requiring consideration of "conduct and work activity of person before and

15

after the criminal conduct"), (6) ("other evidence of the person's fitness"). Subsection (c) of section 53.023 further requires the applicant to furnish proof that the applicant has "maintained a record of steady employment" and "maintained a record of good conduct." *Id.* § 53.023(c).

Given that other statutory factors already address an applicant's general fitness, requiring a nexus between rehabilitative efforts and the underlying criminal conduct allows the licensing authority to focus on the applicant's potential risk to the public based upon his particular past criminal conduct. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) (explaining that when interpreting statutes, court considers entire act, not isolated portions, and "must consider [section']s role in broader statutory scheme"); *see, e.g.*, Tex. Code Crim. Proc. art. 42.12 (in context of community supervision, addressing rehabilitation by treatment or programs tailored to particular criminal conduct at issue such as "alcohol or drug rehabilitation" and "rehabilitation of sex offenders"). The licensing authority is directed to focus on the steps that an applicant has taken to minimize the risk that the applicant will commit similar criminal conduct in the future. Here, the evidence was undisputed that Thompson has not taken objective steps to address the conduct underlying his convictions.

*Due Process Concerns*

Thompson also raises due process concerns. He characterizes the Department's definition of rehabilitation as the retroactive application of a new "policy." *See Texas State Bd. of Pharm. v. Seely*, 764 S.W.2d 806, 814 (Tex. App.—Austin 1988, writ denied) (holding that licensee entitled to notice before administrative hearing of legal standards that would be applied to the facts). Thompson urges that the Department was prohibited from asserting a new and different definition

16

of rehabilitation for the first time after the SOAH hearing and that allowing the Department to create and apply policies after the fact violates due process. *See id.*; *see also Flores v. Employees Retirement Sys.*, 74 S.W.3d 532, 545 (Tex. App.—Austin 2002, pet. denied) (noting that "when an agency adopts new policy in the course of a contested-case hearing without giving the parties pre-hearing notice, the parties may be deprived of procedural due process). Thompson also contends that he should have received a copy of this "policy" in accordance with section 2001.058(c) of the Government Code. *See* Tex. Gov't Code § 2001.058(c) ("A state agency shall provide the administrative law judge with a written statement of applicable rules or policies.").

The Commission, however, did not adopt a new policy, but applied the factors prescribed by the legislature in the Occupations Code. Prior to the administrative hearing, Thompson received written notice that the Commission would consider the statutory factors in the Occupation Code, including his rehabilitative efforts, to determine the consequence of his criminal convictions on his license application. *See* Tex. Occ. Code §§ 53.021–.023. Further, staff urged the Department's interpretation during the administrative proceeding. In its exceptions to the ALJ's proposal for decision, the Department expressly raised Thompson's lack of rehabilitative efforts. The Department noted that Thompson "has never accepted his guilt or engaged in sex offender counseling" and then argued:

> Considering the gravity of the offenses for which the Applicant has been convicted as well as his failure to accept responsibility for what he has done, he cannot be considered rehabilitated. He remains a grave threat to the citizens of Texas.

We conclude that Thompson had notice of the legal standards that applied to his case and that the Department did not violate section 2001.058(c) of the Government Code or Thompson's due process rights. *See* Tex. Gov't Code § 2001.058(c); *Seely*, 764 S.W.2d at 814.

*Allocution*

Thompson also urges that the Department cannot define rehabilitation so that an applicant can only satisfy the definition if he allocutes to the offense for which he was convicted. Allocution in the criminal context refers to "both a statutory and a common-law right to allocute (i.e., to address whether there is any legal reason why sentence should not be imposed) before being sentenced." *Vaughn v. State*, No. 03-08-00610-CR, 2010 WL 2540600, at *3 (Tex. App.—Austin June 25, 2010, no pet.) (mem. op., not designated for publication) (citing Tex. Code Crim. Proc. art. 42.07 and *Eisen v. State*, 40 S.W.3d 628, 631–32 (Tex. App.—Waco 2001, pet. ref'd)).[5] We find the concept of allocution not relevant here.

To the extent that Thompson is arguing that the Department cannot define rehabilitation to require an applicant to admit that he committed the crime of which he was convicted, rehabilitation is only one of the statutory factors and, depending on the nature of the crime, it may or may not be as significant as it is here. Further, as previously stated, the legislature did not include among the factors whether the applicant actually committed the crime of which he was convicted.

---

[5] An allocution statement can also refer to a post-sentence statement of victims, authorized under article 42.03 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. art. 42.03; *Johnson v. State*, 286 S.W.3d 346, 347–48 (Tex. Crim. App. 2009).

**CONCLUSION**

We hold that the Commission's decision to deny Thompson's application for a tow truck license was supported by substantial evidence and made through lawful procedure.  *See* Tex. Gov't Code § 2001.174.  Thus, we sustain the Department's issues, reverse the district court's judgment, and render judgment affirming the Commission's decision.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Reversed and Rendered

Filed:   July 18, 2013

19