# IN THE SUPREME COURT OF TEXAS

════════════

No. 13-0686

════════════

JOHN THOMPSON, PETITIONER,

v.

TEXAS DEPARTMENT OF LICENSING AND REGULATION, RESPONDENT

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**PER CURIAM**

Where a statutory term is undefined, that term is imbued with the plain meaning as commonly understood at the time of enactment. This appeal involves a provision of the Texas Occupations Code concerning licensing restrictions where an applicant has previously been convicted of a crime. Here, an agency overruled an administrative law judge's determination that a candidate for licensure qualified as rehabilitated. The court of appeals upheld the agency's action. But the agency's revision is unsupported by the plain language of the statute. Because the court of appeals upheld the agency's mistaken interpretation and ensuing revision of findings of fact and conclusions of law, we reverse.

John Thompson was an airman assigned to Kirtland Air Force Base in New Mexico in the mid-1980s. In 1983, when he was in his early twenties, Thompson married a woman with children from a previous relationship. The union soured, and Thompson was awarded custody of the children

and moved out of state. During divorce proceedings in 1985, his wife alleged that Thompson sexually abused the children in both New Mexico and Pennsylvania and assaulted her while they were living in New Mexico. Civil authorities declined to prosecute, but the military justice system elected to try the case. Thompson was court-martialed for the disturbing crimes, and for eighteen years he was imprisoned in Fort Leavenworth. With time credited for good behavior, Thompson was released in 2005. Thompson steadfastly maintained his innocence during the legal proceedings and throughout his years of incarceration.

While in prison, Thompson trained for 174 hours to attain certification as a mechanic, and he earned a college degree. Thanks in part to these improvement efforts, Thompson was self-sufficient within weeks of his release. He supported himself by holding a number of odd jobs, including cleaning houses, doing construction work, and working for a towing company. On July 14, 2008, with the support of his employer, Thompson applied to the Texas Department of Licensing and Regulation for a tow truck operator's license. Thompson's bid was backed by a bevy of supportive letters from employers, relatives, and community members—all of whom unstintingly attested to his impressive work ethic and moral probity.

Nonetheless, the Department issued a proposed denial of Thompson's application based on his conviction. The Department contended that his conviction directly related to the duties and responsibilities of the licensed occupation, and it denied the license application pursuant to section 53.021(a) of the Texas Occupations Code.

Thompson contested the denial and received a hearing in front of an administrative law judge from the State Office of Administrative Hearings. The administrative law judge recommended that

2

the Department issue a license, observing that Thompson had not committed any crimes in the years following his release from prison and the conviction was more than two decades old. Specifically, the administrative law judge noted that Thompson demonstrated that he could discharge the duties and responsibilities of a tow truck driver (finding of fact 19) and was unlikely to commit a similar crime in the future (finding of fact 20). The administrative law judge also concluded the Department failed to prove by a preponderance of the evidence that Thompson should not be licensed (conclusion of law 7). Finally, Thompson was considered qualified to operate a tow truck (conclusion of law 8) and therefore his license application should be granted (conclusion of law 9).

The Department, in turn, revised the administrative law judge's findings of fact and conclusions of law to reject Thompson's application. Most centrally, the Department concluded the administrative law judge did not properly evaluate the rehabilitation factor contained in Texas Occupations Code section 53.023(a)(5). While the administrative law judge deemed Thompson's consistent proclamations of innocence marks of character, the Department concluded Thompson's unwillingness to confess foreclosed any possibility of rehabilitation. Accordingly, the Department deleted finding of fact 20 and reversed finding of fact 19 to read: "Due to the nature and seriousness of his offenses, and an apparent lack of rehabilitative effort," Thompson has not shown that "he can satisfactorily perform the duties and discharge the responsibilities of a tow truck operator." The Department also deleted conclusion of law 7 and reversed conclusions of law 8 and 9 in labeling Thompson unfit to operate a tow truck, and denied his application. The Department denied Thompson's motion for agency rehearing.

3

On appeal, the trial court reversed the Department's decision on the ground that the Department's alterations of the findings and conclusions were unlawful. But the court of appeals reversed the trial court to uphold the Department's original decision, observing that agency modifications of administrative findings and conclusions are allowable if the administrative law judge misinterpreted or misapplied the law and the agency explained its rationale. __ S.W.3d __, __. Specifically, the court of appeals held that the Department's modifications were proper because the administrative law judge misinterpreted section 53.023 of the Texas Occupations Code by not requiring Thompson to show evidence of rehabilitation related to the crime for which he was convicted. *Id.* We conclude the Department wrongfully interpreted the statute in overruling the administrative law judge.

The State Office of Administrative Hearings was created in 1991 as a neutral forum where citizens and government agencies may efficiently and fairly resolve legal disputes. *See* TEX. GOV'T CODE § 2003.021. Administrative law judges are licensed Texas attorneys who preside over the hearings and issue either a recommendation for the agency or a final opinion. *See id.* § 2003.041. In an occupational licensing case, the Administrative Procedure Act allows an administrative law judge to issue a final decision. *Id.* § 2001.058(f). An agency may modify the findings and conclusions of an administrative law judge who misinterprets the law, erroneously relies on an incorrect prior administrative decision, or makes a technical error. *Id.* § 2001.058(e).

The construction of a statute is a question of law we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). The Legislature has specified in the Code Construction Act that "[w]ords and phrases shall be read in context and construed according to the rules of

4

grammar and common usage." TEX. GOV'T CODE § 311.011(a). We defer to agency interpretations of statutes only if they are ambiguous, provided that the agency's interpretation is reasonable and does not conflict with the plain language of the statute. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). But if an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the statutory scheme. *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180-81 (Tex. 2013).

Texas Occupations Code section 53.023(a) lists factors a licensing authority shall consider when an applicant has been convicted of a crime:

(1) the extent and nature of the person's past criminal activity;
(2) the age of the person when the crime was committed;
(3) the amount of time that has elapsed since the person's last criminal activity;
(4) the conduct and work activity of the person before and after the criminal activity;
(5) *evidence of the person's rehabilitation or rehabilitative effort while incarcerated or after release*; and
(6) other evidence of the person's fitness, including letters of recommendation . . . .

TEX. OCC. CODE § 53.023(a) (emphasis added). The terms "rehabilitation" and "rehabilitative effort" are not defined in the statute, and therefore are endowed with their plain contextual meaning.

TEX. GOV'T CODE § 311.011; *TGS–NOPEC Geophysical,* 340 S.W.3d 432, 439 (Tex. 2011).

This statutory language became effective in 1999. Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, sec. 53.023(a), 1999 Tex. Gen. Laws 1431, 1448. A leading dictionary published the same year as the statute's passage defines rehabilitation in the criminal context as "[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without

5

committing other crimes." BLACK'S LAW DICTIONARY 1290 (7th ed. 1999). The most recent edition of that dictionary retains this exact definition. BLACK'S LAW DICTIONARY 1476 (10th ed. 2014). And an earlier edition of the same dictionary specifically identified an occupational component of rehabilitation, defining it partly as the "[r]estoration of individual to his greatest potential, whether physically, mentally, socially, or vocationally." BLACK'S LAW DICTIONARY 1287 (6th ed. 1990). Thus, both the statutory language discussing rehabilitation and the ordinary meaning of the term signify that rehabilitation is concerned largely with post-conviction behavior that mitigates the likelihood of future criminal conduct. The ability to function as a contributing member of society by earning a wage is implied by the term.

Reviewing this list of six factors reveals that the Department essentially added an additional, extra-statutory requirement of confession. Although the Department contends that confession and entry into a formal rehabilitation program fall under the guise of the fifth factor, the common, contextual meaning of rehabilitation does not support the Department's addition. Whatever merits the Department's conceptualization of rehabilitation may have in the criminal context, the Department has not demonstrated that the civil statute governing licensure for persons with prior convictions requires a formal confession.

Applying this plain meaning of rehabilitation to Thompson's biography, then, shows that the Department applied a technical definition of rehabilitation unsupported by the statute to deny him a license. By all accounts, Thompson was a model prisoner. He was sentenced to thirty years, but amassed sufficient credit for good behavior that his full sentence was considered served in eighteen years. He trained to become an automotive mechanic during his incarceration, and logged 174 hours

6

of formal training to that end. Further, Thompson attained his college degree while in prison. Thompson's recommendation letters cannot be described as anything less than glowing. TEX. OCC. CODE § 53.023(a)(6). One recommender disclosed that Thompson has helped her with her six-year-old child, and that she trusts him around her son unreservedly. Another recommender recalled that Thompson made a number of repairs on her house, and that she entrusted him with the keys to her home during that period without incident. Thompson's landlord described him as an ideal tenant, and his employers at the towing company called him a model employee. In short, Thompson made tangible and meaningful efforts to improve his character in order to be a contributing member of society after his release. Thompson's behavior in prison and his activities since release—a period of twenty-six years—amount to evidence of rehabilitation, as that term is plainly and commonly understood.

Finally, we acknowledge the seriousness of the accusations levied against Thompson. Sexual abuse is a vile crime; where minors are involved, the Legislature has determined it to be particularly heinous. *See* Allen Place, *Criminal Law*, 70 TEX. B.J. 676, 677 (2007) (discussing Jessica's Law, the "most publicized criminal bill of the 80th session," which revised the Code of Criminal Procedure, Government Code, Health and Safety Code, Penal Code, Civil Practice and Remedies Code, Education Code, Family Code, and Occupations Code to enhance criminal penalties for certain sexual crimes against minors). Yet Thompson served his time, behaved commendably while imprisoned, and has dedicated himself to re-acclimating to society in the years following his release. Throughout, he has maintained his innocence, despite the knowledge that even a rote confession offered a path of less resistance. Thompson's case received a thorough hearing before the

7

administrative law judge, who evaluated the 1988 conviction against evidence of subsequent lawful behavior, unwaveringly supportive letters of recommendation, and Thompson's sedulous efforts to make an honest living.

In rejecting and revising the administrative law judge's findings and conclusions, the Department determined that the judge failed to follow the law. But the Department's insertion of a new requirement unsupported by the plain contextual meaning of an unambiguous statute departed from the law. Thus, the Department's revision of the findings of fact and conclusions of law constituted error. The administrative law judge and the trial court both found in favor of licensure, only to be ultimately overruled by the court of appeals, which permitted the Department's erroneous interpretation of the statutory language to stand. Accordingly, without hearing oral argument, TEX. R. APP. P. 59.1, we grant the petition for review and reverse the court of appeals' judgment.

**OPINION DELIVERED:** December 19, 2014