**Reversed and Rendered, and Memorandum Opinion filed March 20, 2025**



In The

# Fifteenth Court of Appeals

## NO. 15-24-00014-CV

**RICHARD A. HYDE, P.E., IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY; AND THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, Appellants**

**V.**

**HARRISON COUNTY, TEXAS, Appellee**

**On Appeal from the 353rd District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-17-002026**

## OPINION

The Texas Commission on Environmental Quality (the Commission) and its Executive Director, Richard A. Hyde, P.E., appeal the district court's judgment reversing and remanding a Commission order (the Order) that assessed an administrative penalty against Harrison County for violating certain Commission rules related to underground storage tanks. We conclude that the Commission's

Order is supported by substantial evidence and that the County has waived any complaint concerning the Commission's failure to order a supplemental environmental project in lieu of the administrative penalty. Consequently, we reverse the district court's judgment and render judgment affirming the Commission's Order.

## BACKGROUND

The Texas Legislature has recognized that leaking underground storage tanks (USTs) containing certain hazardous, toxic, or otherwise harmful substances cause and continue to pose serious groundwater contamination problems in Texas.[1] Tex. Water Code § 26.341. To address these problems, Chapter 26 of the Texas Water Code, Subchapter I, sets out specific requirements for USTs and authorizes the Commission to develop a regulatory program in accordance with the statute. *See id.* § 26.345. As relevant here, the Water Code specifically directs the Commission to "adopt standards of performance for maintaining a leak detection system . . . or a comparable system or method designed to identify releases in a manner consistent with the protection of human health and the environment." *Id*. § 26.348. In addition, under Section 26.3475(a), all piping in UST systems that routinely convey regulated substances under pressure "must comply with commission requirements for pressurized piping release detection equipment." *Id.* § 26.3475(a).

The Commission's rules setting out the technical standards for USTs and UST systems are found in Chapter 334, Subchapter C, of Title 30 of the Texas

---

[1] "Underground storage tank" means any one or combination of underground tanks and connecting pipes used to contain an accumulation of regulated substances, the volume of which, including the volume of the connecting underground pipes, is 10 percent or more beneath the surface of the ground. Tex. Water Code § 26.342(17) (defining "[u]nderground storage tank").

Administrative Code. *See* 30 Tex. Admin. Code §§ 334.41-.56 (Tex. Comm'n on Envt'l Quality, Technical Standards). Under Rule 334.50(b)(2), UST-system piping must be monitored "in a manner which will detect a release from any portion of the piping system." *Id.* § 334.50(b)(2) (Tex. Comm'n on Envt'l Quality, Release Detection). Specifically, the Rule requires UST-system piping that conveys regulated substances under pressure to "be equipped with an automatic line leak detector" that, among other things, is "tested *at least once per year* for performance and operational reliability." *Id.* § 334.50(b)(2)(A)(i)(III) (emphasis added). Similarly, "each pressurized pipe shall be tested or monitored for releases . . . *at least once per year* by means of a piping tightness test."[2] *Id.* § 334.50(b)(2)(A)(ii)(I) (emphasis added).

The Commission investigated two UST facilities owned and operated by the County. Based on the investigator's findings, Hyde, on behalf of the Commission, initiated an enforcement action against the County by filing a Preliminary Report and Petition. *See id.* § 70.101(a) (Tex. Comm'n on Envt'l Quality, Executive Director's Preliminary Report). According to the petition, the investigator documented that the County's UST facilities "stored gasoline or diesel" and that, as to each facility, the County "had not conducted the annual line leak detector and piping tightness tests," in violation of Rule 334.50(b)(2) and Water Code Section 26.3475(a).

At the contested-case hearing that followed, the Commission presented testimony from (1) the investigator, who generally testified about the results of his investigation and the importance of testing USTs; and (2) the Commission enforcement coordinator, who testified about the enforcement process and the

---

[2] Section 334.50(b)(2)(A)(ii) provides two alternative methods under which pressurized pipes may be tested or monitored for releases "at least once every 30 days." Neither of these two alternative methods is at issue in this case.

Commission's calculation of the recommended penalty. At the conclusion of the hearing, the Administrative Law Judge (ALJ) issued a proposal for decision (PFD) against the County. The Commission subsequently issued an Order in the enforcement action, adopting the PFD (with one change, not relevant here); finding that the County had not conducted an annual line-leak-detector test or a piping-tightness test, as required by Rule 334.50(b)(2); and assessing an administrative penalty for $5,626.

After the County's timely filed motion for rehearing was overruled by operation of law, the County filed a suit for judicial review in district court. *See* Tex. Gov't Code §§ 2001.171, .176. In the suit, the County argued that (1) the Commission's Order is not support by substantial evidence, and (2) the Commission erred in assessing an administrative penalty because it was required, instead, to order the County to implement a supplemental environmental project.[3] Without specifying the grounds on which it was relying, the district court reversed the Order. On appeal, the Commission argues that neither of the grounds asserted by the County has merit, and the Order should be affirmed.

## STANDARD OF REVIEW

Commission orders are reviewed under the substantial-evidence standard, as set forth in the Administrative Procedure Act (APA). *See id.* § 2001.174. Under this standard, a court must reverse or remand a case for further administrative

---

[3] The County also asserted in its motion for rehearing that the enforcement action was barred by governmental immunity, and the district court initially vacated the Commission's Order this ground. On appeal, the Fourteenth Court of Appeals reversed the district court's jurisdictional ruling, holding that the County was not immune from administrative enforcement proceedings under Chapter 7 of the Water Code, including assessments of administrative penalties under Section 7.051. *See Hyde v. Harrison*, 607 S.W.3d 106, 119-120 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decision" are, as relevant here, "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *Id*. § 2001.174(2)(E).

In applying the substantial-evidence standard, "a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence." *Dyer v. Texas Comm'n on Envt'l Quality*, 646 S.W.3d 498, 514 (Tex. 2022). In assessing whether the agency's decision is "reasonably supported by substantial evidence," Tex. Gov't Code § 2001.174(2)(E), the issue is not whether the agency's decision is correct, but only whether the record demonstrates some reasonable basis for the decision. *Texas Comm'n on Envt'l Quality v. Maverick Cnty.*, 642 S.W.3d 537, 544 (Tex. 2022) ("The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." (*Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). We may not substitute our judgment for the judgment of the state agency on the weight of the evidence. *Dyer*, 646 S.W.3d at 514 Instead, "[w]e must uphold the agency's ultimate decision if the evidence 'is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action.'" *Id.* (quoting *Texas Health Facilities Comm'n*, 665 S.W.2d at 453).

The agency's findings, inferences, conclusions, and decisions are presumed to be supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise. *Maverick Cnty.*, 642 S.W.3d at 547; *Upper Trinity Reg'l Water Dist. v. Nat'l Wildlife Fed'n*, 514 S.W.3d 855, 870 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Whether the contestant has met this burden is a question of law, *see Dryer*, 646 S.W.3d at 506, and on review, we focus on the agency's

decision without deference to the district court's judgment, *see Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam) (noting that appellate court applies substantial-evidence review without deference to district court).

In this case, our substantial-evidence review requires us to interpret Rule 334.50(b)(2). This presents a question of law, which we address de novo. *Maverick Cnty.*, 642 S.W.3d at 544 (citing *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011)). Courts interpret agency rules using the same principles that they apply when construing statutes. *Maverick Cnty.*, 642 S.W.3d at 544. That is, our goal in construing the regulation is to ascertain and give effect to the drafter's intent, looking first to the plain and common meaning of the text. *Id.* (citing *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). Undefined terms are typically given their ordinary meaning, unless a different or more precise definition is apparent from the term's use in the context of the statute. *Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). When an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the regulatory scheme. *Thompson v. Texas Dep't of Licensing & Regul.*, 455 S.W.3d 569, 571 (Tex. 2014).

## ANALYSIS

### Substantial Evidence of Testing

In its first issue on appeal, the Commission argues that the district court erred to the extent it reversed the Order on the ground that Commission's ultimate conclusion—that the County violated Rule 334.50(b)(2) and Texas Water Code, Section 26.3475(a)—is not supported by substantial evidence. The Commission

points out, and the undisputed evidence in the administrative record shows, that the County's facilities utilized pressurized lines and mechanical line-leak detectors and that, as a result, the investigator requested that the County produce records demonstrating that it had conducted a line-leak detector test and a piping-tightness test in the twelve months preceding June 18, 2015, the date of the investigation. In addition, the investigator testified that the County failed to produce the requested records. He also explained that if the County had claimed the tests had been performed but the records had been lost or misplaced, he would have given the County additional time to locate the records. Based on the County's failure to produce the requested records, the investigator concluded that the testing had not been performed. From this evidence, the Commission made the following findings of fact:

> 6. During investigations of the County's Facility No. 1 and Facility No. 2 on June 18, 2015, an investigator concluded that the County failed to provide release detection for the pressurized piping associated with the UST systems, in violation of [Rule 334.50(b)(2)].

> 7. [The County] had not conducted line-leak-detector and piping-tightness tests at Facilities 1 and 2 for one year prior to June 18, 2015.

The County argues that there is a lack of substantial evidence to support the Commission's conclusion that it violated Rule 334.50(b)(2) for two independent reasons. First, the County argues that there is no evidence to support findings 6 and 7 because the investigator's testimony is speculative and irrelevant. Specifically, the County asserts that the evidence, at best, shows only that testing records could not be produced, not that the testing did not occur. Notably, the

County does not contend, and the record does not reveal, that it presented any evidence suggesting that it conducted the testing during the twelve months preceding June 18, 2015, but the testing records had been lost or misplaced.

Based on the record before us, we conclude that reasonable minds could conclude or infer that the County did not produce the requested documentation of testing because the testing had not occurred. *See Dyer*, 646 S.W.3d at 514. Thus, contrary to the County's assertion, the evidence of the County's failure to produce the requested testing documentation is sufficient to support the Commission's finding that the testing did not occur "for one year prior to June 18, 2015." *See Maverick Cnty.*, 642 S.W.3d at 547 ("Under substantial-evidence review, we consider 'whether any evidence supports the [agency's] determination.'" (quoting *Public Util. Comm'n v. Texas Indus. Energy Consumers*, 620 S.W.3d 418, 427 (Tex. 2021))). We conclude that findings of fact 6 and 7 are supported by substantial evidence.

Second, the County argues that even if substantial evidence supports the Commission's finding that the County did not conduct line-leak-detector and piping-tightness tests for one year prior to June 18, 2015, this finding is insufficient to support the conclusion that the County violated Rule 334.50(b)(2). The County points out that the Commission's findings of fact included the following:

> 10. After the inspections on June 18, 2015, [the County] had line-leak-detector and piping-tightness tests conducted by a contractor at Facility 1 on June 25, 2015, and at Facility 2 on July 1, 2015.

The County argues that this finding conclusively establishes that it timely conducted leak-line-detector and piping-tightness test because it conducted the

tests during the 2015 calendar year, albeit after the Commission's investigation.

The County's argument is based on a construction of Rule 334.50(b)(2)—specifically, its deadline for compliance—that is contrary to the Commission's. In the County's view, the Rule's requirement that testing be conducted "at least once per year" means that the testing must be conducted each calendar year. Conversely, the Commission's Order includes a conclusion of law stating that owners and operators of UST systems using pressurized piping must conduct line-leak-detector and piping-tightness tests "not less than once every 365 and ¼ days, once per year." In other words, in the Commission's view, the Rule's requirement that testing be conducted "at least once per year" means that the test must be conducted at least once during every twelve-month period. Consequently, whether fact finding 7 is sufficient to support the conclusion that the County failed to conduct the required annual leak-line-detector and piping-tightness test turns on the meaning of the phrase "at least once per year," as that term is used in Rule 334.50(b)(2).

Neither the Water Code nor the Commission's rules define the phrase "at least once per year." The Code Construction Act, however, defines a "year" as "12 consecutive months." Tex. Gov't Code § 311.005(12); see id. § 311.002 (4) "[The Code Construction Act] applies to . . . each rule adopted under a code."). Under this definition of "year," as applied to Rule 334.50(b)(2), owners and operators of USTs would be required to conduct leak-line-detector and piping-tightness tests at least once every twelve months. Thus, the Code Construction Act's definition of "year" is consistent with the Commission's construction of the phrase "at least once per year." Conversely, under the County's interpretation of "year," an owner and operator could test on January 1 of one calendar year and then not test again until December 31 of the next calendar. Therefore, under the County's

construction of "at least once per year," an owner or operator could go as long as twenty-four months without conducting leak-line-detector and piping-tightness tests and yet still comply with the Rule. Considering the objectives of Chapter 26, subchapter I, and the regulatory scheme for USTs as a whole, we conclude that the phrase "at least once per year" means at least once every twelve-month period. Consequently, the Commission's finding that the County failed to conduct line-leak-detector and piping-tightness tests for one year prior to June 18, 2015, supports the Commission's conclusion that the County violated Rule 334.50(b)(2) and Section 26.3475(a) of the Water Code.

### *Administrative Penalty*

In its second issue on appeal, the Commission argues that the district court erred to the extent it reversed the Order on the ground that its assessment of an administrative penalty was improper.[4]

In the district court, and now on appeal, the County argues that the Commission erred in assessing an administrative penalty because it failed to comply with its obligation under Section 7.067(a-1) of the Water Code to approve a supplemental environmental project instead of assessing an administrative penalty.[5] Tex. Water Code § 7.067(a-1). In response, the Commission asserts that

---

[4] Under Section 7.051 of the Water Code, the Commission may assess administrative penalties for violations of the Water Code and of the Commission's rules. Tex. Water Code § 7.051 (providing that Commission "may assess an administrative penalty against a person . . . [who] violates: (A) a provision of this code . . . ; [or] (B) a rule adopted or order issued by the commission"); *see also* § 7.004 (stating that "remedies under [Chapter 7 of the Water Code] are cumulative of all other remedies").

[5] Under Section 7.067(a-1) of the Water Code, the Commission may and, under certain circumstances, must "approve a supplemental environmental project that is necessary to the bring the [local government] respondent into compliance with environmental laws or that is necessary to remediate environmental harm caused by the local government's alleged violation."

(1) the County waived any complaint about not receiving a supplemental environmental project because it failed to raise this issue in its motion for rehearing before the Commission, and (2) even if this issue were preserved, there is substantial evidence to support the Commission's decision not to order a supplemental environmental project. Specifically, the Commission asserts that the record shows the County rejected a settlement offer for a supplemental environmental project and did not propose an alternative supplemental environmental project.

We first consider whether the County preserved error on its complaint that the Commission should have ordered a supplemental environmental project. A timely filed motion for rehearing is a statutory prerequisite to a suit for judicial review of an agency decision in a contested case. *See* Tex. Gov't Code § 2001.145. The purpose of a motion for rehearing is to apprise the agency of the claimed error and allow the agency the opportunity to correct the error or prepare to defend against it. *Upper Trinity Reg'l Water Dist.*, 514 S.W.3d at 870 (citing *Suburban Util. Corp. v. Public Util. Comm'n of Tex.*, 652 S.W2d 358, 365 (Tex. 1983)). Therefore, while the timely filing of a motion for rehearing in an administrative proceeding is jurisdictional, *Mosley v. Texas Health & Human Servs. Comm'n*, 593 S.W.3d 250, 260 (Tex. 2019), the sufficiency of the motion's content is generally an issue of error preservation, *Hill v. Board of Trustees of the Ret. Sys. of Tex.*, 40 S.W.3d 676, 679 (Tex. App.—Austin 2001, no pet.). To preserve error on an issue, the appealing party must raise the issue in a motion for rehearing by setting forth (1) the particular finding of fact, conclusion, of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis on which the claim of error rests. *Id.*; *Upper Trinity*

---

*Id.* § 7.067(a-1).

*Reg'l Water Dist.*, 514 S.W.3d at 870.

In response, the County does not dispute that it failed to raise the supplemental-environmental-project issue in its motion for rehearing. Instead, the County contends that it was not obligated to raise the issue in its motion for rehearing because the Commission's failure to consider a supplemental environmental project in lieu of an administrative penalty constitutes "fundamental error." *See Mack Trucks v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties."). We disagree.

The fundamental-error doctrine is a narrow exception to error preservation rules. *Id.* The Texas Supreme Court has recognized fundamental error in only two instances—when the "error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State," and when "the record affirmatively and conclusively" shows that the rendering court lacked subject-matter jurisdiction. *Id.*; *see In re B.L.D.*, 113 S.W.3d 340, 351 (Tex. 2003) (refusing to apply "criminal fundamental-error doctrine" to parental-rights termination cases). The County does not cite, and our research has not revealed, any case in which an appellate court has applied the fundamental-error doctrine in the context of a motion for rehearing in a suit for judicial review under the APA. Moreover, the County's specific complaint—that the Commission failed to comply with a statutory obligation to approve a supplemental environmental project—does not implicate subject-matter jurisdiction, nor does it directly and adversely affect the interest of the public generally. *See Mack Trucks*, 206 S.W.3d at 577. Consequently, the fundamental-error exception to error preservation does not apply.

In its motion for rehearing, the County challenged the Commission's

administrative penalty solely on the ground that it was barred by sovereign immunity. This jurisdictional argument was later rejected by the Fourteenth Court, which held that the Texas Legislature has waived the County's governmental immunity as to enforcement actions seeking imposition of an administrative penalty under Section 7.051 of the Water Code. *See Hyde v. Harrison*, 607 S.W.3d 106, 119-120 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). The County did not mention Section 7.067(a-1) or the lack of a supplemental environmental project as a legal basis for requesting a new hearing in its motion. Based on the record before us, we conclude that the County failed to preserve error on its complaint regarding Section 7.067(a-1) and that the fundamental-error doctrine does not apply.

Because we have concluded that the grounds on which the County challenges the Commission's Order, to the extent they have been preserved, are without merit, we reverse the district court's judgment.

## CONCLUSION

We reverse the district court's judgment and render judgment affirming the Commission's Order.

/s/  Scott K. Field

Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.