Melissa Goodwin, Justice
In these related appeals, Freestone Power Generation, LLC; Freeport Energy Center, LLC; Brazos Valley Energy, LLC; Tenaska Gateway Partners, Ltd.; Ennis Power Co., LLC; Hays Energy, LLC; Midlothian Energy, LLC; and Wise County Power Co., LLC (Appellants) appeal from the trial court's judgment affirming the orders of the Texas Commission on Environmental Quality (TCEQ) upholding the decision of Richard A. Hyde, P.E., Executive Director of TCEQ (the ED) (sometimes jointly TCEQ) to issue negative use determinations in response to Appellants' applications for use determinations for pollution control property. See 30 Tex. Admin. Code. § 17.2(17) (2008) (Tex. Comm'n on Envtl. Quality, Definitions) (defining "use determination" as positive or negative finding by ED that property is used wholly or partly for pollution control purposes and listing percentage of property determined to be used for pollution control).[1] Appellants sought property tax exemptions by applying for positive use determinations for heat recovery steam generators (HRSGs) used in their power plants. See Tex. Tax Code § 11.31 (providing for property tax exemptions for pollution control property). The ED issued negative use determinations, and TCEQ upheld his determinations. Appellants filed petitions for judicial review, see Tex. Water Code § 5.351 (providing for judicial review of TCEQ acts), and the cases were assigned to the same judge, consolidated *4 for briefing purposes, and heard together.[2] The trial court affirmed TCEQ's orders, and these appeals followed.[3] For the reasons that follow, we reverse the trial court's judgment and remand for further proceedings.
BACKGROUND[4]
Statutory Framework
In 1993, Texas voters ratified a constitutional amendment authorizing the Legislature to enact general laws exempting from ad valorem taxation "all or part of real and personal property used, constructed, acquired, or installed wholly or partly to meet or exceed rules or regulations adopted by any environmental protection agency of the United States, this state, or a political subdivision of this state for the prevention, monitoring, control, or reduction of air, water, or land pollution." Tex. Const. art. VIII, § 1-l (a) (see Tex. H.J.R. Res. 86, §§ 1-2, 73d Leg., R.S., 1993 Tex. Gen. Laws 5576, 5576-77). The Legislature codified the amendment by enacting section 11.31 of the Tax Code. See Act of May 10, 1993, 73d Leg., R.S., ch. 285, §§ 1, 5, 1993 Tex. Gen. Laws 1322, 1322-24 (codified as amended at Tex. Tax Code § 11.31 ). Subsection (a) of section 11.31 provides that "[a] person is entitled to an exemption from taxation of all or part of real and personal property that the person owns and that is used wholly or partly as a facility, device, or method for the control of air, water, or land pollution." Tex. Tax Code § 11.31(a). A "facility, device, or method for the control of air, water, or land pollution," is defined as:
land that is acquired after January 1, 1994, or any structure, building, installation, excavation, machinery, equipment, or device, and any attachment or addition to or reconstruction, replacement, or improvement of that property, that is used, constructed, acquired, or installed wholly or partly to meet or exceed rules or regulations adopted by any environmental protection agency of the United States, this state, or a political subdivision of this state for the prevention, monitoring, control, or reduction of air, water, or land pollution.
Id. § 11.31(b). Property that meets the statutory definition and qualifies for the exemption is referred to as "pollution control property." See id. § 11.31(c)(3), (f), (h), (i).
A person who wishes to obtain an exemption for particular property must apply for a "use determination" from the ED that the property "is used wholly or partly as a facility, device, or method for the control of air, water, or land pollution"-i.e., that the property is pollution-control property eligible for the exemption. See id. § 11.31(a)-(d). The applicant must detail "the anticipated environmental benefits from the installation of the" pollution control property, its estimated cost, and "the purpose of the installation ... and the proportion of the installation that is pollution control property." Id. § 11.31(c). Upon receipt of the application, the ED must determine "if the facility, device, or method *5 is used wholly or partly" to control pollution "and, if applicable, the proportion of the property that is pollution control property."See id. § 11.31(d). He must also notify the chief appraiser of the appraisal district for the county in which the property is located of the use determination. See id.
The applicant or the appraisal district may appeal the ED's use determination to the TCEQ commissioners. See id. § 11.31(e). The commissioners must consider the appeal at their next regularly scheduled meeting and either affirm the use determination or remand it for re-determination. See id. Such an appeal "is not a contested case" for purposes of the Administrative Procedure Act (APA). See id. ; see also Tex. Gov't Code §§ 2001.001 -.902. TCEQ's order in such a proceeding may be challenged through a suit for judicial review in district court in Travis County, see Tex. Water Code §§ 5.351, .354, and the district court's judgment is "appealable as are other civil cases in which the district court has original jurisdiction," id. § 5.355. If an applicant obtains a final positive use determination, i.e., a determination that the property is wholly or partly pollution control property, the applicant can then apply for the exemption with the local appraisal district where the property is located. See Tex. Tax Code § 11.31(i) ; see also id. § 11.43 (setting forth application requirements). The chief appraiser must accept the ED's positive use determination as "conclusive evidence" that the property (or, if applicable, the proportion of the property that the ED found to be pollution control property) qualifies for the exemption. See id. § 11.31(i).
2002 Rule Amendments
In 2001, the Legislature amended section 11.31 to require that TCEQ adopt rules that "establish specific standards for considering applications for determinations" and "allow for determinations that distinguish the proportion of the property that is used to control, monitor, prevent, or reduce pollution from the proportion of property that is used to produce goods or services." See Act of May 22, 2001, 77th Leg., R.S., ch. 881, § 1, 2001 Tex. Gen. Laws 1774, 1775 (codified at Tex. Tax Code § 11.31(g)(1), (3) ). The amendments prohibited the ED from granting a positive use determination "unless the property meets the standards established under rules adopted under this section." Id. (codified at Tex. Tax Code § 11.31(h) ).[5]
*6 In response, TCEQ amended its rules. See 26 Tex. Reg. 7420 (2001), adopted 27 Tex. Reg. 185 (2002) (codified at 30 Tex. Admin. Code §§ 17.1 - .25 ) (2002 Rules). The 2002 Rules prohibited the ED from determining that property is pollution control property unless (1) the property was "used, constructed, acquired, or installed wholly or partly to meet or exceed laws, rules, or regulations adopted by any environmental protection agency of the United States, Texas, or a political subdivision of Texas, for the prevention, monitoring, control, or reduction of air, water, or land pollution"-i.e., unless it met the statutory definition of pollution control property-and (2) "the requirements of § 17.15 and § 17.17 of this title (relating to Review Standards and Partial Determination) have been met." See 2002 Rules § 17.4(c). Section 17.15 set out in a "Decision Flow Chart" standards for making use determinations and prescribed three lines of inquiry for the ED to apply. See id. § 17.15 (flow chart located at 27 Tex. Reg. at 303). First, he was to consider whether installation of the equipment allowed the applicant to meet or exceed a specific, identifiable environmental law or regulation. See id. (flow chart and n.3). If he concluded that it did, the ED next was to consider whether the installation provided an environmental benefit "at the site where it was installed." See id. (flow chart and n.4). If the ED answered this second question in the affirmative, the property was considered "eligible" for a positive use determination, and the issue was the proportion of the property that was considered to be pollution control property, as opposed to production property. See id. (flow chart and ns. 6 & 7).
For determining the proportion of the property that was pollution control property, the Decision Flow Chart and other 2002 Rules created three categories of applications for use determination:
1. Tier I applications for property that TCEQ had predetermined were partially or wholly pollution control property and were listed on a "predetermined equipment list" (PEL). See id. § 17.2(9), (11).
2. Tier II applications for property that was used wholly for pollution control purposes but was not on the predetermined equipment list. See id. § 17.2(12).
3. Tier III applications for property used partially for pollution control purposes but was not on the PEL. See id. § 17.2(7), (13).
Tier III applications for partial use determinations were required to show what portion of the property the applicant estimated was attributable to pollution control purposes through a series of calculations derived from cost accounting principles. See id. § 17.17(b); see also id. § 17.2(4) (defining "cost analysis procedure" (CAP) as a "procedure which uses cost accounting principles to calculate the percentage of a project or process that qualifies for a positive use determination as pollution control property").
Simply described, the calculations sought to identify the percentage of the property's total capital costs that were attributable to the property's pollution-control feature by (1) comparing the total capital costs to the cost of comparable equipment without the pollution-control feature, and (2) adjusting downward for (a) any increases in productive capacity attributable to the new property and (b) the value of any waste byproducts that could be reused or recycled due to the new pollution-control feature. See [2002 Rules] § 17.17 (referenced charts located at 27 Tex. Reg. at 305-06);
*7 see also id. § 17.2(1), (2), (3), (10) (defining "byproduct," "capital cost new," "capital cost old," and "production capacity factor" respectively).
Mont Belvieu Caverns, LLC v. Texas Comm'n on Envtl. Quality , 382 S.W.3d 472, 479 (Tex. App.-Austin 2012, no pet.).
2008 Rule Amendments
In 2007, the Legislature again amended section 11.31, requiring TCEQ to promulgate rules establishing "a nonexclusive list of facilities, devices, or methods for the control of air, water, or land pollution" (the K-list). See Act of May 28, 2007, 80th Leg., R.S., ch. 1277, § 4, 2007 Tex. Gen. Laws 4261, 4264 (codified at Tex. Tax Code § 11.31(k) ). Subsection (k) included 18 items that must be included on the K-list, including HRSGs. See id. (codified at Tex. Tax Code § 11.31 (k)(8) ). The amendments required TCEQ to update the list every three years and provided that TCEQ may remove an item from the list if it finds "compelling evidence" that it "does not provide pollution control benefits." See id. (codified at Tex. Tax Code § 11.31(l ) ). The amendments also created an expedited review procedure for property on the K-list, requiring the ED to act on the application within 30 days of the applicant's submission of the estimated cost and purpose of the installation, as required by subsections 11.31(c)(2) and (3), even if the applicant had not submitted information concerning the environmental benefits of the property, as required by subsection 11.31(c)(1).See id. (codified at Tex. Tax Code § 11.31(m) ); see also Tex. Tax Code § 11.31(c)(1)-(3).
To implement the statutory amendments, TCEQ promulgated rule amendments. See 32 Tex. Reg. 6985 (2007), adopted 33 Tex. Reg. 932 (2008) (codified at 30 Tex. Admin. Code §§ 17.1 - .20 ) (2008) (2008 Rules). The rule amendments replaced the PEL with Part A of a new and slightly different "Equipment and Categories List" (ECL) that was incorporated into the rules.[6] See 2008 Rules §§ 17.2(7) (defining "ECL"), .14 (describing ECL). Part B of the ECL consisted of the categories of property listed in the K-list. See id. §§ 17.2(7), .14(a). The 2008 Rules also created a new category of applications for K-list property, Tier IV, which allowed applicants to propose a methodology for calculating a use percentage other than CAP and provided that the ED was to make the final determination. See id. § 17.17(d). Under the 2008 Rules, if the CAP method or the method accepted by the ED under subsection (d) produced a negative number or a zero, the property was not eligible for a positive use determination. See id. § 17.17(e).
2010 Rule Amendments
In 2009, the Legislature once again amended section 11.31. See Act of May 25, 2009, 81st Leg., R.S., ch. 962, §§ 3, 5-6, 2009 Tex. Gen. Laws 2556, 2557-58 (codified at Tex. Tax Code § 11.31(g-1) ). New subsection (g-1) required the "standards and methods" for making use determinations, including the CAP, to be applied "uniformly to all applications ..., including applications relating to" property on the K-list. Id. (codified at Tex. Tax Code § 11.31(g-1) ). Applications filed before January 1, 2009, were grandfathered and remained subject to the 2008 Rules. Id. at 2558. To comply with subsection (g-1), TCEQ amended its rules. See 35 Tex. Reg.
*8 6255 (2010), adopted 35 Tex. Reg. 10964 (2010) (codified at 30 Tex. Admin. Code §§ 17.2 - 17.25 ) (the 2010 Rules). The 2010 Rules eliminated Tier IV applications and required new applications involving subsection (g-1), or K-list, property to use the CAP method for calculating the pollution control use percentage. See 2010 Rules §§ 17.2(3), .17(a), (c).
Factual and Procedural Background
Appellants are power-generation plants that operate combined-cycle plants, as opposed to single-cycle plants, which for purposes of this appeal, can be simply described as follows: A single-cycle facility involves a compressor, which feeds compressed air into a combustion system, where fossil fuel such as natural gas is mixed with the compressed air and burned at high temperatures, and a turbine, which spins at high speed and, when connected to a generator, produces electricity. Approximately two-thirds of the fuel burned to generate electricity in single-cycle plants is lost in the process in the form of waste heat, which contains various pollutants. Combined-cycle facilities, such as those operated by Appellants, use HRSGs to capture hot exhaust from a gas turbine and use the recovered heat to generate steam, which is then used to propel a steam generator that produces additional electricity. While HRSGs are used to produce electricity, Appellants contend that they also reduce pollution by reducing the amount of fossil fuel that must be burned to produce a given amount of electricity and the amount of emissions discharged into the air.
In 2008, Appellants applied for use determinations for HRSGs under TCEQ's Tier IV rules, proposing their own "avoided emissions" methodologies for calculating the portion of the property used for pollution control purposes.[7] See 30 Tex. Admin. Code § 17.17(d). On May 1, 2008, the ED issued 100% positive use determinations for four Appellants, whose respective appraisal districts subsequently appealed the use determinations, arguing that the HRSGs were used by the four Appellants as production equipment, not pollution control equipment.[8] While the appeals were pending, the ED convened a workgroup that included the four Appellants and the protesting appraisal districts. Following two workgroup meetings, the ED recommended a 61% positive use determination for the four Appellants' HRSGs. Before the TCEQ Commission heard the appeals, the ED filed an unopposed motion for continuance to reconsider his determinations. Three years later, the ED filed a motion to remand the applications to the ED, which TCEQ granted. On July 12, 2012, the ED issued negative use determinations for the four Appellants whose determinations had been appealed, as well as for Appellants Ennis, Hays, Midlothian, and Wise, concluding that the HRSGs' pollution control benefit was negated by their ability to produce a product.[9] Appellants appealed the determinations to TCEQ, which set aside the ED's negative use determinations and remanded *9 the matters to the ED for new determinations.
On remand, the ED issued two notices of deficiencies to all Appellants requesting that they update their applications, cite applicable environmental rules, explain and correct errors in their proposed methodologies, and calculate a percentage of pollution control using the CAP method with specified inputs. Appellants objected to being required to cite environmental rules and use the CAP method but complied subject to their objections. The ED rejected Appellants' proposed methodologies, applied the CAP method with the specified inputs, and issued negative use determinations with pollution control percentages ranging from -2% to -2602%. The ED's stated reasons for the negative use determinations were that (1) he could not find that the property was used, constructed, acquired, or installed wholly or partly to meet or exceed any cited laws, rules, or regulations adopted by any environmental protection agency of the United States, Texas, or a political subdivision of Texas for the prevention, monitoring, control, or reduction of air, water, or land pollution;[10] and (2) even if there were applicable laws cited in the applications, he did not find Appellants' methods for calculating the use determination percentage to be reasonable. Appellants appealed the negative use determinations to TCEQ, which affirmed them as being "in accordance with the applicable law." Appellants filed petitions for judicial review, and the trial court affirmed TCEQ's orders. These appeals followed.
STANDARD OF REVIEW
Appellants challenge TCEQ's order affirming the ED's negative use determinations for their HRSGs. Although Water Code section 5.351 provides for judicial review of TCEQ orders, it does not specify the standard of review. See Tex. Water Code § 5.351(a) ("A person affected by a ruling, order, decision, or other act of the commission may appeal the action by filing a petition."). And because Appellants' appeal of the ED's determinations was not a contested case for purposes of the APA, the "substantial evidence" standard under the APA does not apply. See Tex. Tax Code § 11.31(e) ; Tex. Gov't Code § 2001.174 (providing standard of review if law authorizing judicial review of contested case does not define standard of review, generally referred to as "substantial evidence" standard and contained in subchapter G of APA, entitled "Contested Cases: Judicial Review"); Mont Belvieu , 382 S.W.3d at 485 n.16 (observing that parties agreed that substantial evidence standard did not apply to review of TCEQ order in non-contested case proceeding). However, in companion cases decided in 2013, the Texas Supreme Court applied an abuse of discretion standard to TCEQ's decisions to deny requests for contested case hearings where the applicable statutes did not specify the standard of review. See *10 Texas Comm'n on Envtl. Qual. v. City of Waco , 413 S.W.3d 409, 411, 420, 423-25 (Tex. 2013) (referring to discretion that applicable statute conferred on TCEQ, noting that request for contested case hearing is not contested case hearing, and holding that TCEQ did not abuse its discretion in denying hearing request); see also Texas Comm'n on Envtl. Qual. v. Bosque River Coal. , 413 S.W.3d 403, 404 (Tex. 2013) (describing its decision in City of Waco , as concluding that TCEQ "did not abuse its discretion in denying a contested case hearing to an interested party"); Sierra Club v. Texas Comm'n on Envtl. Qual. , 455 S.W.3d 214, 222-23 (Tex. App.-Austin 2014, pet. denied) (noting "lack of supreme court jurisprudence in this area," following City of Waco and Bosque River , and applying abuse of discretion standard to review of denial of contested case hearing where applicable statute did not specify standard of review).
Although this case does not involve a denial of a contested case hearing, the Texas Supreme Court's decisions in City of Waco and Bosque River Coalition inform our standard of review here, where there was no contested case hearing and the statute authorizing judicial review does not define a standard of review. Accordingly, we review TCEQ's order affirming the ED's negative use determinations for an abuse of discretion. " 'An agency's decision is arbitrary or ... an abuse of discretion if the agency: (1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result.' " Cascos v. Tarrant Cty. Democratic Party , 473 S.W.3d 780, 788 (Tex. 2015) (per curiam) (quoting City of El Paso v. Public Util. Comm'n , 883 S.W.2d 179, 184 (Tex. 1994) ); see also Downer v. Aquamarine Operators, Inc. , 701 S.W.2d 238, 241-42 (Tex. 1985) (stating that test for abuse of discretion is whether trial court acted in arbitrary or unreasonable manner or without reference to guiding principles). A state administrative agency has no inherent authority and therefore has only those powers expressly conferred upon it by the Texas Legislature. Public Util. Comm'n v. City Pub. Serv. Bd. of San Antonio , 53 S.W.3d 310, 316 (Tex. 2001). "[W]hen the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties." Id. However, an agency may not exercise what is effectively a new power or a power that contradicts the statute, even if the power is expedient for administrative purposes. Id. "Moreover, we consider the agency's interpretation of its own powers only if that interpretation is reasonable and not inconsistent with the statute." Id.
Our resolution of this matter also requires us to construe applicable statutes. Statutory construction is a question of law that we review de novo. See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water , 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern is the express statutory language. See Galbraith Eng'g Consultants, Inc. v. Pochucha , 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or unless the plain meaning leads to absurd results. Marks v. St. Luke's Episcopal Hosp. , 319 S.W.3d 658, 663 (Tex. 2010). "We generally avoid construing individual provisions of a statute in isolation from the statute as a whole," Texas Citizens , 336 S.W.3d at 628, and we presume that "the entire statute is intended to be effective," Tex. Gov't Code § 311.021(2). "The Legislature has specified in the Code Construction Act that '[w]ords and phrases shall be *11 read in context and construed according to the rules of grammar and common usage.' " Thompson v. Texas Dep't of Licensing & Regulation , 455 S.W.3d 569, 571 (Tex. 2014) (per curiam) (quoting Tex. Govt Code § 311.011(a) ). We interpret each word, phrase, and clause in a manner that gives meaning to them all. PlainsCapital Bank v. Martin , 459 S.W.3d 550, 556 (Tex. 2015). "The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous." Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue , 271 S.W.3d 238, 256 (Tex. 2008) (citing City of Marshall v. City of Uncertain , 206 S.W.3d 97, 105 (Tex. 2006) (citing City of San Antonio v. City of Boerne , 111 S.W.3d 22, 29 (Tex. 2003) ) ). If the statutory language is ambiguous, we may defer to an administrative agency's construction of its own statutory authority, as long as the construction is not plainly erroneous and does not conflict with the language of the statute. TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 438 (Tex. 2011) ; Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n , 375 S.W.3d 464, 475 (Tex. App.-Austin 2012, pet. denied). However, "[a]gency deference has no place when statutes are unambiguous." TracFone Wireless, Inc. v. Commission on State Emergency Commc'ns , 397 S.W.3d 173, 182 (Tex. 2013).
ANALYSIS
In their first issue, Appellants argue that TCEQ had no statutory authority to issue negative use determinations for their HRSGs and that in issuing its order affirming the ED's negative use determinations, it therefore exceeded its authority. They contend that the language of section 11.31 unambiguously establishes that HRSGs are pollution control property entitled to positive use determinations and that the only authority TCEQ has in making use determinations for K-list property is to distinguish the value of the proportion of the property used for pollution control from the value of that used for production. We agree with Appellants' interpretation of section 11.31, construed as a whole.
Under subsection (a), a person is entitled to an exemption from taxation for property "used wholly or partly as a facility, device, or method for the control of air, water, or land pollution"-i.e., for pollution control property. See Tex. Tax Code § 11.31(a). Subsection (d) generally requires TCEQ to determine whether property is pollution control property and, if so, what proportion is attributable to the pollution control function. See id. § 11.31(d). However, subsection (k) expressly provides that HRSGs be included on the K-list-the nonexclusive list of pollution control property, promulgated in TCEQ rules pursuant to subsection (k), that includes equipment used in production such as HRSGs. See id. § 11.31(k) ; Pochucha , 290 S.W.3d at 867. Thus, under the plain language of subsections (d) and (k), construed together, HRSGs fall within the definition of pollution control property, and TCEQ's discretion is limited to determining the proportion of positive pollution control use. See Tex. Tax Code § 11.31 (d), (k) ; Texas Citizens , 336 S.W.3d at 628 ; Marks , 319 S.W.3d at 663. Subsection (l ) directs TCEQ to update the K-list every three years and authorizes it to remove an item from the K-list only on "compelling evidence to support the conclusion that the item does not provide pollution control benefits." See Tex. Tax Code § 11.31(l ). Consequently, the statute expressly requires TCEQ to treat HRSGs as pollution control property absent formal rulemaking to remove HRSGs from the K-list. See id. ; Pochucha , 290 S.W.3d at 867.
This construction of subsections (a), (d), (k), and (l ) is reinforced by subsection (m), which provides as follows:
*12 Notwithstanding the other provisions of this section , if the facility, device, or method for the control of air, water, or land pollution described in an application for an exemption under this section is a facility, device, or method included on the list adopted under Subsection (k), the executive director of the Texas Commission on Environmental Quality, not later than the 30th day after the date of receipt of the information required by Subsections (c)(2) and (3) and without regard to whether the information required by Subsection (c)(1) has been submitted, shall determine that the facility, device, or method described in the application is used wholly or partly as a facility, device, or method for the control of air, water, or land pollution and shall take the actions that are required by Subsection (d) in the event such a determination is made.
Tex. Tax Code § 11.31(m) (emphases added). In short, subsection (m) provides for an expedited review (within 30 days) of an abbreviated application (without submission of information regarding environmental benefits generally required under subsection (c)(1) ) for K-list property, which has been deemed pollution control property. While subsection (d), the general rule governing applications for positive use determinations, states that the ED "shall determine if " the property is pollution control property, see id. § 11.31(d) (emphasis added), subsection (m), which governs K-list applications, provides that the ED "shall determine that " the property is pollution control property, see id. § 11.31(m) (emphasis added). Thus, read together, subsections (d), (k), (l ), and (m) expressly and unambiguously state that, while the ED generally has the discretion to determine "if" property is used for pollution control, he has no such discretion-short of formally removing the property from the K-list-when it comes to K-list property, which by statutory definition is pollution control property. See id. § 11.31(d), (k), (l ), (m) ; Texas Citizens , 336 S.W.3d at 628 ; Marks , 319 S.W.3d at 663 ; Pochucha , 290 S.W.3d at 867. Therefore, although there is no statutory requirement as to what positive use percentage the ED must find, under section 11.31 construed as a whole, he may not find that K-list property has no positive use for pollution control. See Texas Citizens , 336 S.W.3d at 628.
TCEQ argues that this construction of section 11.31 reads it to say that K-list property is eligible for a tax exemption regardless of how it is used or whether it was installed to comply with an environmental regulation and thus conflicts with the constitutional amendment and subsection (b), which define pollution control property as property "used, constructed, acquired, or installed wholly or partly to meet or exceed rules or regulations" of an environmental agency to prevent, control, or reduce pollution. See Tex. Const. art. VIII, § 1-l (a); Tex. Tax Code § 11.31(b). To resolve that conflict, TCEQ contends, it must determine what portion of a K-list property is used for pollution control on a case-by-case basis. However, subsection (c)(3) requires the applicant to provide the purpose of the installation of the property, ensuring that the applicant must report an environmental use. See Tex. Tax Code § 11.31(c)(3). And the plain language of section 11.31 provides that an HRSG is a "facility, device, or method for the control of air, water, or land pollution," see id. § 11.31(k), and defines a "facility, device, or method for the control of air, water, or land pollution" as property that is "used, constructed, acquired, or installed wholly or partly to meet or exceed [environmental] rules or regulations," see id. § 11.31(b) ; see also Marks , 319 S.W.3d at 663. Thus, by the express statutory language, HRSGs are property that is used *13 for pollution control. See Tex. Tax Code § 11.31(b), (k) ; Texas Citizens , 336 S.W.3d at 628 ; Pochucha , 290 S.W.3d at 867. To construe section 11.31 as providing for a case-by-case determination of whether K-list property is pollution control property is inconsistent with subsections (b) and (k), which provide that K-list property is pollution control property, and renders meaningless and superfluous subsection (l ), which requires "compelling evidence" that a property is not pollution control property for its removal from the K-list. See Tex. Tax Code § 11.31(b), (k) ; Tex. Gov't Code § 311.021(2) ; Martin , 459 S.W.3d at 556 ; Texas Citizens , 336 S.W.3d at 628 ; Hogue , 271 S.W.3d at 256.
TCEQ contends that "the statute required applicants to identify the environmental regulation that the HRSG was installed to comply with," that the ED makes the final determination as to whether K-list property qualifies as pollution control property, and that the TCEQ reasonably rejected the rules cited by Appellants.[11] However, section 11.31(c)(3), which TCEQ cites in support of this argument, requires only that applicants provide information detailing the purpose of the installation of the property and makes no reference to citation to specific environmental rules or regulations. See Tex. Tax Code § 11.31(c)(3). Nor does the Texas Constitution require applicants to cite to environmental rules. The Constitution requires only that the property be used wholly or partly to meet or exceed environmental rules, see Tex. Const. art. VIII, § 1-l (a), a requirement reflected in subsection (b), which defines pollution control property as property installed to meet environmental rules, see Tex. Tax Code § 11.31(b). By statutory definition, HRSGs are "used, constructed, acquired, or installed wholly or partly to meet or exceed [environmental] rules or regulations." See Tex. Tax Code § 11.31(b), (k) ; Pochucha , 290 S.W.3d at 867. Thus, by definition, HRSGs meet the constitutional and statutory requirement that they be used to meet environmental laws.
TCEQ also argues that the K-list is not "the final word" because the Legislature directed it to review and revise it. It is true that the Legislature expressly directed that TCEQ update the K-list every three years and authorized it to remove an item upon "compelling evidence" that it "does not provide pollution control benefits." See Tex. Tax Code § 11.31(l ). However, TCEQ has not acted to remove HRSGs from the K-list, and they are still among the "facilities, devices, or methods for the control of air, water, or land pollution" that TCEQ is required to include on the K-list and treat accordingly.
Further, TCEQ's construction of subsection (m) is flawed. TCEQ argues that subsection (m) states that if the property is used or installed to meet or exceed an environmental regulation, then subsection (m) applies. Therefore, TCEQ contends, if the ED determines that the applicant failed to show that it was legally compelled to invest in the property even partly to meet an environmental regulation, then subsection (m) does not apply. Subsection (m) actually provides that if the property described in the application is on the K-list , then the following provisions contained in subsection (m) apply. See id. § 11.31(m). TCEQ argues that this reading ignores that the device must not only be on the K-list but must also be installed to comply with environmental regulations. However, as discussed above, subsections *14 (b) and (k) establish that any K-list property is a "facility, device, or method for the control of air, water, or land pollution" that is "used, constructed, acquired, or installed wholly or partly to meet or exceed [environmental] rules or regulations. " See id. § 11.31(b), (k) (emphasis added); Texas Citizens , 336 S.W.3d at 628. And, there is no statutory requirement that the applicant be "legally compelled" to purchase any particular type of pollution control property.
TCEQ also contends that the provision that the ED "shall determine that" the property is used wholly or partly for pollution control should be construed to mean that the ED "shall determine if" the property is used for pollution control. We cannot agree. First, such a construction conflicts with the express statutory language. See Pochucha , 290 S.W.3d at 867. "The statutory text could not be plainer." See Hoskins v. Hoskins , 497 S.W.3d 490, 494 (Tex. 2016) (holding that statutory language-"shall confirm"-"could not be plainer"). In addition, the "similarly worded statutes" that TCEQ cites in support of its reading of the phrase "shall determine that" are inapposite when considered in context. For example, TCEQ cites section 341.066 of the Texas Health & Safety Code, which provides that "[a]n owner or operator of a tourist court, hotel, inn, or rooming house who provides a gas stove for the heating of a unit in the facility shall determine that the stove is properly installed and maintained in a properly ventilated room." See Tex. Health & Safety Code § 341.066(d). TCEQ contends that under Appellants' reading, this provision requires the owner to deem a stove safe regardless of its condition. However, the statute consists of a set of duties that an operator of a tourist court, hotel, inn, or rooming house must meet to comply with the Health & Safety Code and prevent being deemed a public health nuisance. See id. § 341.066. When read in the context of these other duties, then, subsection (d) means that the owner or operator must inspect the stove and ensure that it is properly installed and maintained and is safe. See id. § 341.066(d). Likewise, in the other statutes TCEQ cites, the actors are required to ensure that certain conditions are met. See Tex. Prop. Code § 92.258(b) (providing that landlord shall determine that smoke alarm is in good working order at beginning of tenant's possession); Tex. Agric. Code § 71.105 (requiring that "department shall determine that [specified plants] are apparently free from" certain diseases and insects); Tex. Transp. Code § 224.063(a) (providing that commission "shall determine that it will have sufficient funds available" before contracting under subchapter). To construe these statutes as requiring the actors to make certain determinations regardless of the circumstances would lead to an absurd result. See Marks , 319 S.W.3d at 663. Here, the express language of the statute, read as a whole, provides that the determination that HRSGs are at least partly pollution control property has been made by the Legislature, see Tex. Tax Code § 11.31 (b), (k), and that the ED is to issue that determination in an expedited review of an abbreviated application, see id. § 11.31(m).
Finally, TCEQ argues that the last phrase of subsection (m)-requiring the ED to take the action required by subsection (d) "in the event such a determination is made"-means "if such a determination is made," supporting its contention that the ED may determine case-by-case that K-list property is not pollution control property. However, the phrase's meaning "cannot be determined in isolation but must be drawn from the context in which it is used." Zanchi v. Lane , 408 S.W.3d 373, 377 (Tex. 2013). Read in the context of the entirety of section 11.31, in particular *15 subsections (b), (k), (l ) and the preceding portions of subsection (m), "in the event" is best construed to mean "if the [property] is [K-list property]" and the ED makes the required determination "that" the property is pollution control property, then the ED shall take the actions required by subsection (d). See Tex. Tax Code § 11.31(m) ; Hebner v. Reddy , 498 S.W.3d 37, 42-43 (Tex. 2016) (concluding that best course is to adopt construction that does least damage to statutory language and best comports with statute's purpose (citing Zanchi , 408 S.W.3d at 379-80 ) ). We cannot conclude that the final phrase of subsection (m) means that the ED has the discretion to determine that K-list property-pollution control property by statutory definition-has no pollution control value whatsoever. See Hebner v. Reddy , 498 S.W.3d at 42-43 ; Thompson , 455 S.W.3d at 571 ; Zanchi , 408 S.W.3d at 377 ; Texas Citizens , 336 S.W.3d at 628.
In Mont Belvieu , we concluded that "property cannot qualify as 100% pollution-control property if any portion of its value is attributable to its capacity to produce goods and services." 382 S.W.3d at 489. The inverse is also true. The Legislature has mandated that HRSGs are, at least "partly," pollution control property; therefore, they cannot be determined to be 100% non-pollution control property. See Tex. Tax Code § 11.31(b), (k). Further, TCEQ cites to no statutory authority-and we are aware of none-for the ED or TCEQ to determine that a K-list property, which is defined as pollution control property, provides so much production value that it entirely negates its statutory pollution control value.[12] We conclude that it was an abuse of discretion for TCEQ to assign totally negative use determinations to Appellants' HRSGs. We sustain Appellants' first issue. Because our disposition of Appellants' first issue is dispositive, we do not reach their second issue in which they argue that TCEQ's negative use determinations cannot be upheld based on its rules; or its third issue, in which they argue that TCEQ acted arbitrarily and capriciously in retroactively applying its 2010 rules and in requiring citation to environmental rules and that its actions violated the "equal and uniform" provision of the Texas Constitution. See Tex. Const. art. VIII, § (1)(a).
CONCLUSION
Having concluded that TCEQ abused its discretion in issuing negative use determinations for Appellants' HRSGs, we reverse the judgment of the trial court and remand to TCEQ for further proceedings consistent with this opinion.

All citations to 30 Tex. Admin. Code are to rules promulgated by the Texas Commission on Environmental Quality. It is undisputed that the 2008 rules apply in this case, and citations are to the 2008 rules except where otherwise indicated.

Appellants also sought declaratory relief below, but the trial court "dismissed, or in the alternative, ... denied" those claims, and Appellants do not complain of that ruling on appeal.

At the request of the parties, the appeals were consolidated for purposes of the briefing and consideration.

Some of the actions or events discussed involved TCEQ's predecessor, the Texas Natural Resources Conservation Commission. For clarity, we refer to both as TCEQ.

As this Court observed in Mont Belvieu Caverns, LLC v. Texas Commission on Environmental Quality , in requiring TCEQ to distinguish between pollution control property and production property, the Legislature "drew a conceptual line similar to one suggested by the Attorney General in an opinion he had issued a few weeks earlier construing section 11.31." 382 S.W.3d 472, 477 (Tex. App.-Austin 2012, no pet) ; see Tex. Atty Gen. Op. No. JC-0372 (2001). The ED had asked the Attorney General to opine on whether the exemption applied to equipment used to make a product that limits pollution through its design, such as a boiler constructed with technology that achieves more combustion and, in turn, lowers emissions, as opposed to "added on" equipment that controls pollution at the end of the production process, such as scrubbers. See Op. No. 0372 at 3-4; see also Mont Belvieu , 382 S.W.3d at 477. The Attorney General responded that "property that serves both a production and a pollution-reduction purpose [ ] is not entitled to a tax exemption on the total value of the property," but only a partial exemption corresponding to the "portion of property that actually controls pollution." See Op. No. 0372 at 6-7; see also Mont Belvieu , 382 S.W.3d at 478. The Attorney General concluded by suggesting that "[t]he legislature may want to provide [TCEQ] with additional guidance regarding the proper criteria for assessing what portion of property actually controls pollution," observing that the legislation that later became the 2001 amendments to section 11.31 was already under consideration. See Op. No. 0372 at 7 & n.4; see also Mont Belvieu , 382 S.W.3d at 478.

While the 2002 Rules required the ED to establish the PEL as part of its percentage-of-use analysis, TCEQ did not include the PEL in its rules but instead attached it as an appendix to its Technical Guidelines Manual, published to provide guidance to applicants. See 2002 Rules §§ 17.2(9), (11), .4(c), .15 ; 19 Tex. Reg. 7793, 7794-96 (1994) (describing manual and explaining reasons for making PEL part of appendix to manual).

Appellants state that their methodologies were "output-based emissions" methodologies that were "based on the actual amount of emissions that were avoided by the use of the HRSGs." Appellants contend that by helping to produce a given amount of electricity using less fuel and emitting fewer contaminants, HRSGs help to prevent, control, or reduce pollution.

The four Appellants that initially received 100% positive use determinations were Freestone, Freeport, Brazos Valley, and Tenaska.

Like the other four Appellants, Ennis, Hays, Midlothian, and Wise had filed Tier IV applications under the 2008 Rules.

This finding applied to five Appellants-Freestone, Tenaska, Ennis, Hays, and Wise. The ED found that the HRSGs were not used to meet or exceed the environmental laws these Appellants cited in their applications. See 30 Tex. Admin. Code § 17.4(a) (Applicability) (providing that to obtain positive use determination, "property must be used, constructed, acquired, or installed wholly or partly to meet or exceed laws, rules, or regulations ... for the prevention, monitoring, control, or reduction of air, water, or land pollution"), .10(d)(4) (requiring application to state specific environmental rule being met or exceeded by pollution control property). The remainder of Appellants-Freeport, Brazos Valley, and Midlothian-cited environmental rules or regulations that were accepted by the ED. See itation index="105" url="https://cite.case.law/citations/?q=30%20Tex.%20Admin.%20Code%20%C2%A7%2017.4">id. § 17.10(d)(4).

As noted above, the rules cited by three Appellants were accepted, and those cited by the other five were rejected. See supra note 9.

TCEQ cites to its general authority to adopt rules to establish standards. See Tex. Tax Code § 11.31(g)(1). However, section 11.31(g)(1) does not authorize TCEQ to adopt standards that conflict with the provisions of section 11.31, and a rule construed to effectively negate all positive pollution control value of a statutorily defined pollution control property would do just that.