

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-19-00484-CV

**SEGUNDO NAVARRO DRILLING, LTD.**, Lewis Petro Properties, Inc., Tercero Navarro,
Inc., and Rodney R. Lewis,
Appellants

v.

**SAN ROMAN RANCH MINERAL PARTNERS, LTD.**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2018CVK002483D4
Honorable Oscar J. Hale, Jr., Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:     Beth Watkins, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:         Sandee Bryan Marion, Chief Justice
               Luz Elena D. Chapa, Justice
               Beth Watkins, Justice

Delivered and Filed: August 19, 2020

AFFIRMED

On July 9, 2020, appellants filed a motion for rehearing of our June 24, 2020 opinion and

judgment in this case. Having considered appellants' motion for rehearing, we deny the motion,

withdraw our June 24, 2020 opinion and judgment, and substitute this opinion and judgment in

their stead.

Appellants Segundo Navarro Drilling, Ltd. ("SNDL"), Lewis Petro Properties, Inc. ("LPP"), Tercero Navarro, Inc., and Rodney R. Lewis (collectively, "Appellants") appeal the trial court's order denying a motion to dismiss they filed pursuant to the Texas Citizens Participation Act ("TCPA"). Appellants' motion sought to dismiss breach of contract, conversion, and vicarious liability claims asserted by appellee San Roman Mineral Partners, Ltd. We affirm the trial court's order.

## BACKGROUND

San Ramon owns mineral rights in the Eagle Ford Shale in Webb County, Texas. In 2008, it signed three oil and gas leases with SNDL to develop those minerals. Rodney R. Lewis, who is the president of SNDL's general partner, Tercero Navarro, signed the leases on SNDL's behalf. LPP—of which Lewis is also president—operates the wells on the land covered by the leases.

The leases contain provisions allowing SNDL to conduct seismic "shoots," or surveys, on the leased land. These shoots gather seismic data that is necessary to develop minerals in the complex Eagle Ford Shale formation. The leases specify that:

> [SNDL] may not grant permission for seismographic or other "shooting operations" on the Leased Premises to others nor may others who do not own any legal or equitable interest in this Lease participate in the costs of such seismic operations in exchange for such data, as [SNDL] may only conduct or cause to be conducted such operations for its own use.

The leases further provide that "[SNDL] shall provide [San Ramon] with a copy of" seismic data obtained from any "3D seismic survey" SNDL conducts on the leased premises. SNDL also "agree[d] not to sell such seismic data without [San Ramon's] consent."

After SNDL and San Roman executed the three leases, LPP contracted with a company called Global Geophysical Services, Inc. ("Global") to conduct seismic shoots in an area the parties refer to as the Hawk Field. That area includes a portion of the San Roman leasehold. The LPP-Global contract provides that Global has authority to conduct seismic shoots "to the extent L.P.P.

has the right or authority to grant such permission," that Global will own any resulting data, and that Global "shall have the sole right to grant non-exclusive licenses" to the data. The contract also provides that Global was responsible for obtaining any necessary permits to conduct its work. After Global conducted the Hawk Field shoot, it licensed the seismic data it obtained to both LPP and to unidentified third parties.

Global did not obtain permission from San Roman to conduct any portion of the Hawk Field shoot, and San Roman contends that neither SNDL nor LPP had authority to grant Global permission to survey San Roman's leasehold. When San Roman learned Global had conducted seismic shoots over its land and was selling the data from those shoots, it requested a copy of the data from SNDL. However, SNDL responded that it did not own the data and could not turn it over without Global's permission. San Roman then requested the data from Global, which offered to license the data to San Roman for $20,000 per acre. Global advised San Roman that it had obtained permission from SNDL "or another Lewis Energy Group company" to acquire and market the data.

After both SNDL and Global refused to turn over the seismic data, San Roman sued Appellants for breach of contract and conversion and sought declaratory judgment on its rights under one of the three San Roman-SNDL leases. It also sought to pierce the corporate veil around Lewis and hold him vicariously liable for the actions of SNDL, LPP, and Tercero Navarro. Finally, it alleged it was entitled to exemplary damages because Appellants' actions constituted actual fraud or malice.

Appellants filed a motion to dismiss San Roman's claims under the TCPA. They argued San Roman's claims are "related to communications about seismic shoots" among Appellants and between Appellants and Global and therefore implicate Appellants' exercise of the right of association. In response, San Roman argued its claims relate only to Appellants' private business

interests and that private business interests do not fall under the umbrella of "common interests" for the purposes of the TCPA's definition of the right of association. The trial court agreed with San Roman and denied Appellants' TCPA motion. Appellants then filed this interlocutory appeal to challenge the denial of their TCPA motion as to San Roman's breach of contract, conversion, vicarious liability and veil-piercing, and exemplary damages claims.[1]

## ANALYSIS

### Standard of Review

We review a trial court's denial of a TCPA motion to dismiss de novo. *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 603 (Tex. App.—San Antonio 2018, pet. denied). In reviewing a ruling on a TCPA motion, "[w]e view the pleadings and evidence in the light most favorable to the nonmovant." *Id.*

We also review questions of statutory construction de novo. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). Our objective is to "ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *Id.* (internal quotation marks omitted). When a statute does not define a key term, we give that term its "common, ordinary meaning unless a contrary meaning is apparent from the statute's language." *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017). To determine a word's common, ordinary meaning, we look first to its dictionary definitions. *Id.* at 35. "[I]f an undefined term has multiple common meanings . . . we will apply the definition most consistent with the context of the statutory scheme." *Thompson v. Tex. Dep't of Licensing & Regulation*, 455 S.W.3d 569, 571 (Tex. 2014).

---

[1] Appellants do not challenge the denial of their TCPA motion as to San Roman's declaratory judgment action.

*Applicable Law*

"The TCPA provides an expedited procedure for the early dismissal of groundless legal actions that impinge on First Amendment rights." *Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016). Its purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. We construe the TCPA "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

A motion to dismiss under the TCPA is subject to a three-part analysis. First, under the version of the TCPA that was in effect when this lawsuit was filed,[2] the movant is required to show by a preponderance of the evidence that the nonmovant's "legal action is based on, relates to, or is in response to [the movant's] exercise of the right of free speech, right to petition, or right of association" as those rights are defined by the TCPA. *Id.* § 27.003(a); *see also id.* § 27.005(b). If the movant makes that showing, the TCPA applies and the burden shifts to the nonmovant to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). Finally, if the nonmovant establishes its prima facie case, the movant can show it is entitled to dismissal if it "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

---

[2] The Legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687 (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). We apply the TCPA as it existed before the 2019 amendment. *See id.* Unless otherwise indicated, all citations to the TCPA are to the pre-amendment version of the statute.

*Application*

Because Appellants' TCPA motion relied on the right of association, they were required to show by a preponderance of the evidence that San Roman's legal action is based on, relates to, or is in response to a "communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* §§ 27.001(2), 27.003(a), 27.005(b). Appellants argue their communications with Global and among themselves satisfy this definition because they have a common interest in successfully extracting minerals from the area of the Hawk Field shoot. The trial court concluded, however, that San Roman's claims relate "to business interests as opposed to common [public] interests."[3] Based on that conclusion, the trial court held the TCPA does not apply to San Roman's claims. It therefore did not reach the questions of whether San Roman established a prima facie case for each essential element of its claims or whether Appellants established valid defenses to those claims.

Appellants contend the trial court erred by concluding that "common interests" does not include the private business interests at issue here because "there is no statutory exclusion for 'business interests' [and] public participation is not a statutory element of the right of association." San Roman responds that the trial court's analysis is correct because "[r]equiring a community, group, or public purpose in the right to associate's 'common interests' is consistent with the [TCPA's] statutory scheme and encourages an effective enforcement of the TCPA while discouraging an overbroad misuse."

The trial court's denial of Appellants' TCPA motion and the reasons it gave for that ruling are consistent with our sister court's recent holding in *Kawcak v. Antero Resources Corp.*, 582 S.W.3d 566 (Tex. App.—Fort Worth 2019, pet. denied). In *Kawcak*, the Second Court of Appeals

---

[3] The word "public" appears in brackets in the trial court's order.

performed a "straightforward but admittedly long" analysis of the word "common" as it is used in the TCPA's definition of the right of association. *Id.* at 573. The court explained:

> This focus may seem trivial, but it establishes a point where two roads of TCPA interpretation diverge. One road assigns a meaning to the word "common" that embraces a set of only two people and triggers the TCPA in almost any case of conspiracy. The other road reads "common" to embrace a larger set defined by the public or at least a group. In our view, a plain-meaning interpretation of the TCPA supports the second definition.

*Id.*

Because the TCPA does not define "common," the *Kawcak* court turned to five different dictionaries to analyze its meaning. *Id.*; *see also* TEX. GOV'T CODE ANN. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). It noted that all five dictionaries it consulted offered multiple definitions of the word "common," with four of the five primarily defining it as relating to "a community at large" and secondarily defining it as "the interest shared by two people." *Kawcak*, 582 S.W.3d at 573, 575–77. In contrast, the fifth dictionary reversed those two definitions. *Id.* at 577. Because "common" has multiple meanings, the court was tasked with choosing the meaning it believed was most consistent with the TCPA's statutory scheme. *See Thompson*, 455 S.W.3d at 571. It "select[ed] the definition of 'common' that relates to a group or community" because that definition "carries out the stated purposes of the TCPA and prevents the right of association from being an outlier in the statutory scheme," "prevents the TCPA from being used to protect rights detached from or even at odds with the TCPA," and "carries out the Act's manifest object and avoids an absurd construction." *Kawcak*, 582 S.W.3d at 573. While the *Kawcak* Court recognized the breadth of the TCPA's language and acknowledged that other courts of appeals had reached seemingly dissimilar results, it concluded that its "dictionary-driven" examination gave effect to the Legislature's intention for the TCPA as expressed by the plain language of the statute. *Id.* at 575–87. Based on

that reasoning, it held that "the plain meaning of the word 'common' in TCPA section 27.001(2)'s definition of the 'the right of association' requires more than two tortfeasors conspiring to act tortiously for their own selfish benefit." *Id.* at 588.

We agree with *Kawcak*'s thorough analysis. The characterization of "common" that Appellants ask us to apply here arguably finds support in both the broad language of the TCPA and in certain dictionary definitions. As Appellants themselves recognize, however, the trial court's order states that it relies on a version of Webster's Dictionary that defines "common" as "of or relating to the public at large." Like the *Kawcak* Court, we conclude that this definition of "common"—one that suggests a communal or public interest, rather than a private interest shared solely by a select few—is more congruent with both the TCPA as a whole and with our canons of statutory construction than the definitions upon which Appellants rely. *See Harper*, 562 S.W.3d at 11; *Thompson*, 455 S.W.3d at 571. For example, the meaning of the word "common" that the trial court applied here presumes that the Legislature intended to favor public interests over private interests. TEX. GOV'T CODE ANN. § 311.021(5). It maintains consistency between the right of association on one hand and the rights of free speech and petition—both of which the TCPA define as including a public interest component—on the other. TEX. CIV. PRAC. & REM. CODE § 27.001(3), (4); *see also* TEX. GOV'T CODE ANN. § 311.023(1), (5) (in construing a statute, courts may consider the "object sought to be attained" and the "consequences of a particular construction"). Finally, the Legislature has explicitly provided that the purpose of the TCPA is

> to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, *and otherwise participate in government* to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

TEX. CIV. PRAC. & REM. CODE § 27.002 (emphasis added). Appellants have not explained how their right to "participate in government" is served by defining the word "common" to include their private business interests.[4]

Appellants argue that *Kawcak* is an outlier that "constitute[s] a judicial 'fix' of the TCPA, which is prohibited by the Supreme Court." They urge us to instead follow purportedly different analyses on this issue from the First, Third, Twelfth, and Fourteenth Courts of Appeals. However, the opinion Appellants cite from the First Court of Appeals was withdrawn on en banc reconsideration after the parties filed their briefs in this court. *See Gaskamp v. WSP USA, Inc.*, No. 01-18-00079-CV, 2018 WL 6695810 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018), *withdrawn and superseded by Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) (op. on en banc reconsideration). The substitute opinion issued by the en banc court explicitly adopts *Kawcak*'s analysis and holds that "with respect to the pre-amendment version of the TCPA, the proper definition of 'common' in the phrase 'common interests' is 'of or relating to a community at large; public.'" *Gaskamp*, 596 S.W.3d at 476.

It is true that the Third, Twelfth, and Fourteenth Courts have treated various business interests as "common interests" under the TCPA. *See Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 185 (Tex. App.—Tyler 2018, no pet.); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied); *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at *7–8 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.); *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 295–96 (Tex.

---

[4] Because the right of association claim in *Kawcak* focused on communications between two alleged conspirators, the Second Court of Appeals declined to specify what size a group must be to "cross[] the boundary of common." *Kawcak*, 582 S.W.3d at 576. A careful reading of *Kawcak* shows, however, that one of the two alleged conspirators in that case was a businessman "and his companies." *Id.* at 571. Similarly, Appellants here are a businessman and companies controlled by him. For this reason, we conclude that we need not place a specific numeric value on the TCPA's definition of "common." We note, however, that we express no opinion on the ultimate merits of San Roman's vicarious liability/veil-piercing claim.

App.—Austin 2018, pet. denied); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 205 (Tex. App.—Austin 2017, pet. dism'd). However, those opinions predate *Kawcak*, and none of them rest on a detailed analysis of the word "common." Instead, most of Appellants' cited authority focuses on the distinction between constitutionally protected expression and the statutory definitions in the TCPA. *See Abatecola*, 2018 WL 3118601, at *7–8; *Craig*, 550 S.W.3d at 294–96; *Elite*, 520 S.W.3d at 201–02. That distinction is not relevant where, as here, both parties agree that the TCPA's defined rights are broader than the traditional constitutional conception of those rights. Furthermore, while Appellants imply that these courts disagree with *Kawcak*'s analysis, one of them—the Fourteenth Court of Appeals—recently relied on *Kawcak* to reject a construction of the TCPA's right of association that would "'hing[e] on whether a single tortfeasor or multiple tortfeasors acted.'" *Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 653 (Tex. App.—Houston [14th Dist.] 2019, pet. filed) (quoting *Kawcak*, 582 S.W.3d at 584).

Finally, as San Roman notes, the Legislature recently amended the TCPA to explicitly provide that "'[e]xercise of the right of association' means to join together to collectively express, promote, pursue, or defend common interests *relating to a governmental proceeding or a matter of public concern*." Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687 (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2)) (emphasis added). While we agree with Appellants that we must apply the statute as it existed at the time this lawsuit was filed, we are also mindful that "[w]hen the meaning of an existing law is uncertain, the Legislature's later interpretation of it is highly persuasive." *Tex. Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex. 1996). Furthermore, because the Legislature amended the TCPA's definition of "right of association" after the Second Court of Appeals issued its opinion in *Kawcak*, we must presume it was aware of that case law when it acted. *Traxler v. Entergy Gulf*

*States, Inc.*, 376 S.W.3d 742, 748 (Tex. 2012). Because the *Kawcak* Court's analysis is consistent with the Legislature's later interpretation of the TCPA's right of association, we decline Appellants' invitation to apply a contrary interpretation of the statute's previous language. Accordingly, we overrule Appellants' claim that the trial court erred by concluding the TCPA does not apply to San Roman's claims. Because our ruling is dispositive, we do not need to address any of Appellants' other issues. *See* TEX. R. APP. P. 47.1.

*Appellants' Issue on Rehearing*

In their motion for rehearing, Appellants argue for the first time that we should reverse the trial court's order denying its TCPA motion because "the development of oil and gas is recognized as a 'matter of public concern' in free speech cases, and the result should be no different for the right of association." We generally do not address issues raised for the first time on rehearing. *See AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). This is because "[t]he sole purpose of a motion for rehearing is to provide the court an opportunity to correct any errors on issues already presented." *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 747 (Tex. App.—Dallas 2007, pet. denied).

Here, the primary issue[5] Appellants presented on initial submission was "[w]hether the trial court erred in concluding that the TCPA did not apply because 'business interests' are exempted from 'common interests' supporting the exercise of the right of association, when the Legislature included no such carveout in the statute." That issue cannot be interpreted as asking us to determine whether oil and gas production constitutes a matter of public concern for purposes of the TCPA. *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) (distinguishing

---

[5] The other issues Appellants presented—whether San Roman sufficiently proved the elements of its claim and whether Appellants were entitled to attorney's fees and sanctions—assumed that the trial court incorrectly resolved Appellants' primary issue.

between new issues that were not previously raised and "new *arguments* in support of issues properly before the Court"). Moreover, the record shows Appellants had ample opportunity on initial submission to present the new issue they raise on rehearing. The trial court's order denying Appellants' TCPA motion explicitly cited *Kawcak* to conclude that the TCPA's definition of right of association applied to "common [public] interests" and therefore did not protect the private business interests upon which Appellants relied. Additionally, even though Appellants directly addressed *Kawcak*'s analysis in their opening brief, they did not argue that oil and gas production constituted a matter of public concern under that analysis. Instead, they simply argued that *Kawcak* was wrongly decided. Finally, in response to San Roman's appellate argument that *Kawcak*'s application of "a community-oriented concept of common interests serves both purposes of the TCPA . . . while a private concept serves neither," Appellants' reply brief argued that "public participation is not an element of the TCPA's 'right of association.'"

In short, Appellants' motion for rehearing asks us to consider an issue that they could have raised on initial submission, but did not. As a result, we conclude we may not properly consider that issue for the first time on rehearing. *See AVCO Corp.*, 251 S.W.3d at 676; *OAIC Commercial Assets*, 234 S.W.3d 726 at 747.

## CONCLUSION

We affirm the trial court's order denying Appellants' TCPA motion.

Beth Watkins, Justice